# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 05/14/2021 12:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Perez,Deputy Clerk
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Barbara Meiers

1  Marc S. Strecker, Esq. – Bar No. 140644
   STRECKER LAW OFFICES
2  2600 Michelson Drive, Suite 1700
   Irvine, CA 92612
3  Telephone: (949) 852-3600
   Facsimile: (949) 861-9696
4  Email: marc.strecker@sbcglobal.net

5

6  Philip Kaufler– Bar No. 81160
   Law Offices of Philip Kaufler,
7  A Professional Corporation
   8383 Wilshire Blvd., Suite 830
8  Beverly Hills, California 90211
   Telephone: (323) 655-0961
9  Facsimile:  (323) 655-9655
   E-mail: philip@kauflerlaw.com
10
11 Attorneys for Plaintiff JANICE FOX

12

13                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                       FOR THE COUNTY OF LOS ANGELES

15

16 **JANICE FOX**, an individual,              **Case No:**   21STCV18183

17                                             **COMPLAINT FOR:**
                      Plaintiff,
18                                             **(1) ELDER ABUSE BY ISOLATION**
   v.
19                                             **(2) ELDER ABUSE - FINANCIAL**
   **THEODORE FOX, an Individual and as**
20 **Trustee of the GERSON FOX AND**           **(3) BREACH OF FIDUCIARY DUTY**
   **GERTRUDE FOX FAMILY TRUST and as**
21 **Trustee of the BEARBIZ IRREVOCABLE**      **(4) IMPOSITION OF CONSTRUCTIVE**
   **TRUST, ULTIMATE ACTION, LLC, a Nevada**   **TRUST**
22 **limited liability company, SUPREME**
   **STUDIOS, a Nevada limited liability**     **(5) UNJUST ENRICHMENT**
23 **company, TF PROPERTIES #2, a California**
   **limited liability company, TF PROPERTIES** **(6) INVALIDITY OF TRUST AMENDMENT**
24 **#3, a California limited liability company,** **– WILL CONTEST**
   **BARRY FOX, an individual, and DOES 1**
25 **through 50 and ROE Entities 51 through 100,** **(7) INTENTIONAL INTERFERENCE WITH**
                                               **INHERITANCE RIGHTS**
26                    Defendants.
27                                             **(8) DEMAND FOR AN ACCOUNTING**

28                                    1
                                 **COMPLAINT**

**(9) PETITION TO DECLARE SPECIAL TRUSTEE AGREEMENT INVALID**

**(10) PETITION TO DECLARE THE IRREVOCABLE BEARBIZ TRUST INVALID**

**(11) CIVIL RICO**

**(12) DEMAND FOR AN ACCOUNTING RE GERTRUDE FOX**

**(13) DEMAND FOR AN ACCOUNTING RE BEARBIZ, ULTIMATE ACTION, SUPREME STUDIOS, TF PROPERTIES 2 AND TF PROPERTIES 3**

**(14) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

## THE PARTIES

A.      **Individual Parties**

1.      Gertrude Fox ("Gertrude") was born on October 20, 1928 and was 92 years of age when she died on December 25, 2020.  Gertrude is the mother of Plaintiff Janice Fox ("Janice"), Defendant Theodore Fox ("Theodore") and Defendant Barry Fox ("Barry").  It was the death of Gertrude just a few months ago that prompted an investigation into what was just discovered as the massive financial abuse perpetrated by Theodore and assisted by Barry.  At all times mentioned herein, Gertrude was a resident of the State of California, County of Los Angeles.

2.      Gerson Fox ("Gerson"), age 93, is the father of Janice, Theodore and Barry.  At all relevant times herein Gerson has lived in Los Angeles County.  On information and belief, Gerson is currently residing at a nursing facility in Los Angeles, California.

3.      Janice as daughter of Gertrude is an intestate heir of Gertrude, and on information and belief she was also a beneficiary of one-third of the Fox Family Trust through approximately 2012 when Theodore and Barry used undue influence and financial and physical

2
**COMPLAINT**

coercion to cause their parents to change their estate plan and remove Janice's one-third share. Janice will succeed as the sole beneficiary to the estate of Gertrude per *Probate Code § 259* if she establishes with clear and convincing evidence that Theodore and Barry have committed physical abuse (through isolation) and/or financial abuse of Gertrude.

4.      Theodore is the younger brother of Janice and one of the sons of Gertrude and Gerson.  At all times relevant herein, Theodore has lived both in Los Angeles County where he has a home, and in Las Vegas, Nevada where he has a second home.

5.      At all times relevant herein, Barry has lived in Israel and Janice is informed and believes that Barry visits Los Angeles from time to time and is still a citizen of the United States.

**B.      Entity and Doe Defendants**

6.      Janice is informed and believes that Defendant Ultimate Action, LLC ("Ultimate Action") is a Nevada limited liability company, with Theodore as its manager and its only member and 100% owner.

7.      Janice is informed and believes, and on that basis alleges, that at all times relevant to this Complaint, Ultimate Action is and has been (a) the alter ego, co-conspirator, duly authorized agent, servant, employee and/or representative of Theodore; and (b) acting within course, scope and authority of such conspiracy, agency, service, employment and/or representation.  Additionally, Janice is informed and believes, and on that basis alleges, that Ultimate Action: (a) was legally responsible for the occurrences alleged herein; and (b) proximately caused Janice's damages.

8.      Janice is informed and believes and based thereon alleges that Theodore is the special trustee of the Gerson and Gertrude Fox Family Trust (the "Fox Family Trust"). Janice is informed and believes that the Fox Family Trust was created on or about July 17, 2006 and amended several times thereafter.

3
**COMPLAINT**

9.     Janice is informed and believes and thereon alleges that the Bearbiz Irrevocable Trust ("Bearbiz") is an irrevocable trust formed under the laws of California and settled by Gerson and his late wife Gertrude on or about April 4, 2011.

10.     Janice is informed and believes and thereon alleges that Theodore is the Trustee of Bearbiz and that Theodore together with Barry are the beneficiaries of Bearbiz.  By virtue of being a trustee of both the Fox Family Trust and Bearbiz, with virtually unlimited powers Theodore was a fiduciary of both trusts.

11.     Janice is informed and believes that Defendant Supreme Studios, LLC ("Supreme Studios") is a Nevada limited liability company created on May 12, 2010 with Theodore as its manager and primary member.

12.     Janice is informed and believes, and on that basis alleges, that at all times relevant to this Complaint, Theodore was acting: (a) as the alter-ego, co-conspirator, duly authorized agent, servant, employee and/or representative of Supreme Studios; and (b) within the course, scope and authority of such conspiracy, agency, service, employment and/or representation.  Additionally, Janice is informed and believes, and on that basis alleges, that Supreme Studios: (a) was legally responsible for the occurrences alleged herein; and (b) approximately caused Janice's damages.

13.     Upon information and belief, at all times relevant hereto, there existed a united of interest between Supreme Studios such that any individuality and separateness between them has ceased to exist and Theodore was a mere alter ego of Supreme Studios.

14.     Janice is informed and believes that Defendant TF Properties #2 ("TF Properties 2") is a California limited liability company registered with the Secretary of State on June 7, 2012, with Theodore as its manager and its primary member.

15.     Janice is informed and believes that Defendant TF Properties #3 LLC ("TF Properties 3") is a California limited liability company registered with the Secretary of State on March 23, 2015 with Theodore as its manager and its primary member.

16.     Janice is informed and believes, and on that basis alleges, that at all times relevant to this Complaint, Theodore was acting: (a) as the alter-ego, co-conspirator, duly authorized agent, servant, employee and/or representative of TF Properties 2 and TF Properties 3; and (b) within the course, scope and authority of such conspiracy, agency, service, employment and/or representation.  Additionally, Janice is informed and believes, and on that basis alleges, that TF Properties 2 and TF Properties 3: (a) were legally responsible for the occurrences alleged herein; and (b) proximately caused Janice's damages.

17.     The true names, capacities, and/or liabilities of Does 1 through 50 (individuals) and Roes 1 through 100 (entities) inclusive, whether individual, corporate, associate or otherwise, are presently unknown to Janice, who therefore sues said persons and entities by such fictitious names.  Janice will seek leave to amend this Complaint to show the true names and capacities of these Doe and Roe defendants, when they have been ascertained, or according to proof at trial.  Indeed, Janice anticipates that those defendants will be added when their identities are discovered through discovery and the parties' investigations progress.  Janice is informed and believes that Theodore and Barry have established a complex corporate and limited liability structure consisting of several affiliated entities in an attempt to obscure, hide, and conceal their business activities and assets.  Janice is informed and believes, and on that basis alleges that each of the Defendants (including those sued as Does 1 through 50 and Roes 51 through 100) are legally responsible for the acts and omissions herein complained of, as alleged below.  Additionally, because of the intertwined and tangled business affairs of the presently named Defendants and the Doe and Roe Defendants, the Doe and Roe Defendants are within the "Defendants" as that term is used in this Complaint.

5
**COMPLAINT**

18.     Janice is informed and believes, and on that basis alleges, that at all times relevant to this Complaint, each of the Defendants was acting: (a) as the alter-ego, co-conspirator, duly authorized agent, servant, employee and/or representative of the other defendants; and (b) within the course, scope and authority of such conspiracy, agency, service, employment and/or representation.  Additionally, Janice is informed and believes, and on that basis alleges, that each of Does 1 through 50, inclusive and Roes 1 through 100: (a) were legally responsible for the occurrences alleged herein; and (b) proximately caused Janice's damages.

19.     Upon information and belief, at all times relevant hereto, there existed a unity of interest between each of the Defendants (including those sued as Does 1 through 50 and Roes 51 through 100) such that any individuality and separateness between them have ceased to exist and each Defendant was a mere alter ego of each other Defendant.

## NATURE OF ACTION

20.     Through a combination of malicious slander, elder abuse isolation, massive financial elder abuse, irreconcilable conflicts of interests, breach of fiduciary duties, sheer intimidation and bullying and greed, the defendants, who are a combination of individuals and wholly owned alter ego entities took advantage of their elderly and ill parents to take and secrete from them nearly their entire multi-million dollar estate leaving them totally dependent upon these defendants for their basic needs.

21.     On information and belief, it is alleged that these defendants had at least two goals in mind.  First, they did not want to wait until their parents died to inherit their share of their estate so they devised a plan to take all of their assets while they were still alive.  Those assets consisted of valuable commercial and residential properties worth many millions of dollars and cash in the bank as well as other assets.

22.     Second, they wanted to make certain that through their use of slander, isolation, intimidation and bullying and by retaining lawyers ostensibly for their parents but who worked

6
**COMPLAINT**

at the direction of the defendants that they were able to convince and/or coerce their elderly and vulnerable parents to remove plaintiff as a one-third beneficiary of the estate, leaving for themselves and additional several million dollars of estate assets.

23.    These acts of isolation and financial abuse have been continuous and ongoing from 2012 to the present.  The isolation continues to this day as does the financial abuse.  The defendants still retain all of the property and cash they took from their vulnerable and elderly parents.

24.    Through one core set of deliberate actions the defendants committed elder abuse, breach of fiduciary duties, used undue influence to eliminate plaintiff as a beneficiary of their parents' estate plan, and intentionally interfered with inheritance expectancy.

25.    This action also involves numerous and deliberate conflicts of interest between one of the defendants, who through undue influence, duress and coercion obtained the status of special trustee, with an unconscionable fee arrangement which currently provides fees of nearly $2 Million per year, without requirement of any specific work activity.  This special trustee arrangement was devised by Theodore to siphon off the estate for himself so as to deny plaintiff and other beneficiaries the bulk, if not the entire estate.

26.    As part of the scheme to exercise undue influence on his elderly and ill parents, Theodore selected new lawyers for them, directed these lawyers, and used those lawyers to assist him in slandering plaintiff in a despicable manner, out of extreme jealousy and greed.

27.    To make matters worse, while Theodore was in a fiduciary relationship, he engaged in a massive conflict of interest whereby he had a straw man, another attorney, purchase secured creditors' claims against the estate and then transfer those claims to him so he could foreclose on those claims wiping out the trustees' and beneficiaries' interest in the trust. In other words, Theodore purchased creditors' claims against his own parents, and on information and belief, used his parents' own money to buy those claims and then foreclose on

those claims taking over millions of dollars worth of property in the process and either holding said claims to this day or in some cases selling them off and keeping the proceeds for himself, while his parents relied upon him for their most basic needs, including depriving them of much needed healthcare.

28.    These actions of elder abuse by way of isolation and financial elder abuse is supported by clear and convincing evidence.

29.    These acts of elder abuse trigger a statutory remedy whereby it is deemed that the two defendant abusers, Theodore and Barry, predeceased the decedent Gertrude and are disinherited. *Probate Code §259.*

**30.**    *Welf. & Inst. Code* § 15610.30(b) provides that a person or entity "shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity... knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." The case law has interpreted this to be a conclusive presumption of elder abuse.

## GENERAL ALLEGATIONS COMMON
## TO ALL CAUSES OF ACTION

31.    Janice is informed and believes and based thereon alleges that on or about August 1, 2011 Gerson and Gertrude created a Special Trustee Agreement.

32.    This Special Trustee Agreement was created through undue influence and coercion by Theodore for the compensation of Theodore at levels that are far beyond anything that would ever be considered reasonable so as to deliberately strip the Fox estate from Janice and partly from Barry, and to accelerate and advance the entire corpus of the estate directly to Theodore prior to the death of the settlors.

8
**COMPLAINT**

33.     When the Special Trustee Agreement was created, Gerson and Gertrude were already in their 80s and deemed to be elders by statute.  They were both suffering from physical and mental ailments at the time.

34.     In addition to their elderly status and illness, both Gerson and Gertrude were under extreme financial stress when Theodore was appointed special trustee.

35.     Theodore capitalized on their vulnerable state and financial issues and used undue influence to secure for himself a lucrative and startling agreement.  Theodore saw the situation of his parents, took advantage of their desperate circumstances and devised a compensation package that would eliminate any interest his parents had in their estate and in the process also wipe out the assets of the estate from the beneficiaries of the estate.

36.     The Special Trustee Agreement recites that the effective date of the agreement is as of August 1, 2011 and shall continue in force for a period of 10 years. Thereafter, it recites that the agreement shall be renewed automatically for successive terms of three years unless either party gives written notice to the other party at least 90 days prior to the expiration of any term of such party's intention not to renew.

37.     The compensation structure to Theodore from the Special Trustee Agreement began at $75,000 per month as of August 11, 2011 and provides that Theodore's compensation will increase every year by an additional $10,000 per month.  Based on the formula the monthly compensation is currently $165,000 per month or $1,980,000 per year.  The compensation continues to either get paid or accrues for the entire 10 years plus renewals regardless of whether there is any work activity required by the trust.

38.     The Special Trustee Agreement further provides that "payments shall be made only to the extent that there is reasonably available cash from the Fox Properties' operations as a whole… If cash is not available, such unpaid salary will accrue (without interest) until the Trust is able to make such payments to Special Trustee.  Both the Trustees and that Special Trustee are

9

**COMPLAINT**

mindful of the possibility that all or part of the compensation of the Special Trustee may not be paid, in whole or part, to the Special Trustee due to the problems with the Fox Properties.  The Special Trustee has agreed to accept that risk but the Trustees wanted to be clear the compensation to be paid to the Special Trustee is to be paid before any distributions are made to their heirs." The agreement further provides that the Special Trustee shall be paid as additional compensation $500,000 for past services provided.

39.     The compensation to Theodore was a device created and structured by Theodore such that the accumulated compensation over the last 10 years would be used to diminish or in fact eliminate all assets of the Gerson and Gertrude estate so as to effectively wipe out any interest that Janice may have inherited as an heir to the Fox estate.

40.     The cumulative total either paid or accumulated for the benefit of Theodore over the last 10 years now stands at approximately $11,780,000.00.  This compensation package was the product of undue influence and coercion and is just one part of the massive financial abuse perpetrated by Theodore against his elderly and ill parents as part of his elder abuse.

41.     Janice is informed and believes that on November 28, 2011, and eighth amendment to the Fox Family Trust was executed – whereby Theodore was given the unilateral power to withdraw or borrow money from the Fox Family Trust for any trust purpose.  This amendment was entered into while Theodore was in a fiduciary relationship with the trustees and beneficiaries.  It is presumed to be invalid as the product of undue influence.

42.     As a fiduciary of the Fox Family Trust and Bearbiz, Theodore was required to act with the utmost honesty and integrity and make full disclosure to the beneficiaries of these trusts of all material facts concerning the existence of these trusts, transactions of the trusts, and of course to not engage in fraudulent or criminal activity with regard to these trusts.

43.     Theodore breached his fiduciary duties by actively concealing, to this day, the existence of these trusts or the self-serving and fraudulent transactions he engaged with concerning these trusts.

44.     Theodore further breached his fiduciary duties as to both the Fox Family Trust and Bearbiz by failing to ever render an accounting to their beneficiaries.

45.     Theodore also breached his fiduciary duties by failing to disclose his conflict of interest in being a trustee of the two trusts while at the same time he was the largest creditor of both trusts of their settlors Gerson and Gertrude.

46.     Janice further alleges that Theodore is the alter ego of Bearbiz in that Theodore is the sole trustee, and a beneficiary with full rights and unfettered discretion to effectively treat the assets and income of Bearbiz as if it were wholly owned by Theodore, including the right to sell assets, incur liabilities, pay himself compensation and borrow against assets.

47.     Janice is further informed and believes and thereon alleges that Bearbiz was conceived of and created by Theodore as a device to siphon off the estate of Gertrude and Gerson to Theodore and a small portion, if any remaining, to Barry. Janice is informed and believes that Gerson received no consideration from Bearbiz in exchange for his transfer of the Membership Interests to Bearbiz.

48.     In relevant part, Section 5.01(a)(1) of Bearbiz provides Theodore with the authority to "distribute as much of the trust property to or for the benefit of any beneficiary as our Trustee determines… [and] may distribute net income, principal, or both."

49.     Section 5.01(a)(2) of Bearbiz provides Theodore with the authority to "make distributions to or for the benefit of one or more trust beneficiaries to the complete exclusion of the other beneficiaries in equal or unequal amounts…"

50.     Janice is informed and believes that on April 4, 2011, Gerson executed fourteen (14) separate assignments of membership interests from himself individually and as a trustee of

11

**COMPLAINT**

the Fox Family Trust, to Bearbiz.  Each assignment of membership interest is executed by Gerson and Theodore.  On information and belief there was no consideration paid by either Theodore or Barry.

51.     Janice is informed and believes that Ultimate Action was used by Theodore to buy substantial creditor judgments, charging liens and other liens recorded and/or claimed against his father Gerson and mother Gertrude in a four step process.  These acts were in breach of his fiduciary duties to both the Fox Family Trust and Bearbiz and to all the beneficiaries of both trusts.

52.     First, Theodore used an intermediary to purchase the judgments, charging orders and liens.  Second, Theodore purchased those judgments, charging orders and liens from the intermediary totaling in value in excess of $20 Million, for a fraction of their face value.  Third, Theodore, through his wholly owned company, Ultimate Action asserted these same claims, liens, charging orders and assignments of judgments against his parents Gerson and Gertrude at full value.  Fourth, Theodore obtained writs of executions, orders for appearance of judgment debtor against Gerson and Gertrude and an application for sale of dwelling against Gertrude and/or against her trust.  All the while Theodore was in a fiduciary relationship with Gerson and Gertrude as he was a trustee and special trustee of the Fox Family Trust and the Bearbiz Irrevocable Trust as well as being the major beneficiary of these two trusts.

53.     The transactions by which Ultimate Action purchased the creditor claims, first through an intermediary and then a purchase by Ultimate Action from the intermediary was concealed by Theodore.

54.     Prior to the death of Gertrude and while both Gertrude and Gerson were alive but when they were over 80 years old, Theodore, through undue influence, coercion, isolation, financial abuse and breach of fiduciary duty took for himself virtually the entire estate of Gertrude and of Gerson Fox so that they were completely dependent on Theodore for their

12

**COMPLAINT**

financial support.  On information and belief the estate taken by Theodore was worth many millions of dollars.

55.     To further conceal the multitude of transactions by which Theodore took from Gertrude and Gerson virtually their entire assets and income Theodore used straw men and a multitude of limited liability companies that he owned, controlled and managed.  None of the assets was taken by Theodore in his own name as part of his scheme so that the transactions and his involvement would remain hidden from Janice and the other beneficiaries of the various trusts.

56.     At all relevant times Barry worked together with Theodore to commit acts of elder abuse by way of isolation and financial abuse as describe throughout this Complaint, and he further assisted Theodore in the acts of intentional interference of Janice's inheritance rights.

57.     On information and belief, it is alleged that Janice was previously bequeathed an inheritance of one-third of the estate of decedent Gertrude through testamentary documents duly executed by Gertrude.  Through the designed campaign against Janice of many and continuous years of elder abuse by way of carefully orchestrated and malicious isolation of Gertrude and of Gerson Fox, financial abuse of Gertrude and of Gerson, coercion, duress and slandered perpetrated by Theodore, by himself an through his wholly owned companies Ultimate Action, Supreme Studios, TF Properties 2 and TF Properties 3 and through his use of Bearbiz and the Fox Family Trust, Theodore used undue influence to cause Gertrude and Gerson to revise their estate plan to remove the one-third bequest in favor of Janice. To this day, it is still unknown by Janice when and if she was completely removed as an heir to the Gerson and Gertrude estate plan or an heir to their various trusts.  On information and belief, at the time of her death, Gertrude personally owned real estate located at 337 S. Roxbury Dr., Beverly Hills, California 90212 and through Shops at Shenandoah Shopping Center, LLC, a limited

13
**COMPLAINT**

liability company, owned real estate located at 15300 E Smoky Hill Rd, Aurora, Colorado 80015, in addition to other real and personal property and assets.

58.     Janice, through counsel has made inquiries attempting to obtain the estate plan from Theodore, through his lawyers, but the requests have been denied.

59.     In addition to the foregoing, through the use of a deliberate and complex scheme of financial and physical elder abuse, utilizing a myriad of companies and using his position of trustee and special trustee, Theodore stripped the multi-million dollar estate of Gertrude and Gerson taking their assets and money for himself, leaving his parents with minimal assets and income and substantially unable to meet their basic needs, including proper health care without having to resort to full reliance on Theodore for their subsistence.

60.     Theodore deliberately put his parents into desperate circumstances so that he could control them so that they would be forced to distance themselves from Janice and their grandchildren, that they loved and spent so much time with for so many years.

61.      With complete control of the assets and income, previously owned and enjoyed by Gerson and Gertrude their living conditions became desperate.  They were deliberately isolated by Theodore from Janice, her children Kele Kirshchenbaum ("Kele"), Alexander Masket ("Alexander") and Adam Kaufler ("Adam"), Gertrude's brother, Rabbi Samuel Fox and their friends. At the same time they were denied basic healthcare and other necessities.  In their twilight years as elders in their 80s and 90s they were completely controlled by and dependent on Theodore.

62.     The relationships between Gertrude and Gerson and Janice were close for their entire lives, until Theodore deliberately and maliciously devised and executed his plan of intimidation, isolation and control.

63.     Prior to Theodore's intimidation and bullying, Gertrude and Gerson did many things together with Janice; they spoke daily, did charity work together; they spent time at each

14

**COMPLAINT**

others' homes; had many dinners and lunches at Janice's home; Janice preparing food for Gertrude and Gerson to take home virtually every week; spent many Sabbaths together at Janice's home; spent many Jewish holidays together, with Gertrude and sometimes Gerson sleeping over many nights during the year; traveled together; went to restaurants together; went to movies together; went to professional sporting events together; Gertrude and sometimes Gerson went to Kele, Alex and Adam's elementary, middle school and high school team sports games and cheering them on; going to synagogues together; Gertrude coming to Janice's house, nearly every Wednesday to learn Jewish law and Bible together with Janice's friends; went to lunch together with Janice's friends; celebrated life cycle events together, including a weekend bar mitzvah of Adam; birthdays together; Chanukah together; Rosh Hashanah together, Sukkoth together; charity banquets together; Passover weeks, usually outside of the United States and many other times together.  When Janice started having children Gertrude and Gerson spent a lot of time together with Janice and their grandchildren doing many of the things described above together with Janice, her husband and their grandchildren.

64.    Theodore's actions were deliberately planned, in part to force his parents to give up on a relationship with Janice and their own grandchildren and they were also planned to enrich Theodore and his ill-gotten acquisition of the bulk of the Fox family multi-million dollar estate and conceal same from Janice and the grandchildren.

65.    This conduct as described hereinabove related to elder isolation and financial abuse has been continuous for the past several years.  The financial elder abuse and isolation elder abuse has continued to the present and is ongoing.

66.    Janice did not discover the financial abuse and this complex scheme until after the death of her mother Gertrude on December 25, 2020.  Much of Theodore and Barry's overall and specific plan is still unknown to Janice.

67.    Janice is still unaware of what has become of the assets and income taken by Theodore and Barry, even though they are both fiduciaries with obligations of full disclosure. There has been no disclosure to Janice by either of them of any of the conduct as alleged in this Complaint and there has been no disclosure of the other activity that remains actively concealed by Theodore and Barry.

## FIRST CAUSE OF ACTION

### (ELDER ABUSE BY ISOLATION)

### [Janice Against Theodore and Barry]

### (*Welfare and Institutions Code* § 15610.43)

68.    Janice incorporates by reference paragraphs 1 through 67 and realleges same as if fully set forth herein.

69.    Janice has standing to bring this claim for both physical and financial elder abuse pursuant to Section 15657.3(d) of the *Welfare and Institutions Code* which provides, in pertinent part, that an intestate heir whose interest is affected by the elder abuse action may commence or maintain the action, as may an "interested person" under *Probate Code* § 48. That section defines "interested person" as an heir, devisee, child, spouse, creditor, beneficiary or any other person having a property right in or claim against the estate that may be affected by the proceeding. Alternatively, standing is based upon the authority set out in *Estate of Lowrie* (2004) 118 Cal.App. 4th 712, 717 to the effect if the abuser is the only one with standing then anyone who has an interest in the estate has standing to bring the action in place of the abuser.

70.    Beginning in or about October 2012 and continuing to the present, Theodore, with the complicity and assistance of Barry, began a campaign to isolate Gerson and Gertrude from Janice and coerced and intimidated Gerson and Gertrude to cut off ties with Janice and their three grandchildren, Kele, Alexander and Adam.

71.     The isolation was only one part of Theodore's scheme to wrest control of the Fox estate from his sister, Janice. He also engaged in a campaign of malicious slander against Janice.

72.     On information and belief the coercion and intimidation consisted of economic threats and physical threats.  Theodore and Barry used various deliberate tactics to isolate Gerson and Gertrude from the rest of their family.  It was a fully planned scheme to isolate Gerson and Gertrude from Janice and their own grandchildren, for the purpose of monetary gain.

73.     Theodore wanted and he believed he needed Janice and her adult children to be kept away from Gerson and Gertrude so that he could perpetrate his massive and intricate financial abuse without anyone discovering his scheme against his own parents, solely for his own benefit.

74.     At the time this plan to isolate Gerson and Gertrude from their daughter and grandchildren were initiated, Gerson and Gertrude were in their 80s.  On information and belief it is alleged that Gerson had been in and out of hospitals and rehabilitation nursing facilities for several years with heart issues and a series of transient ischemic attacks ("TIAs") also known as mini-strokes.  That together with diabetes and other illnesses has kept Gerson bedridden for most of the past 8 to 10 years.

75.     On information and belief, it is alleged that Gertrude had also been in poor physical and mental health for the past many years, including suffering early stage dementia within the years leading up to her death.

76.     On information and belief, by the time they were in their 80s Gerson and Gertrude had worked hard for the previous 60 years accumulating commercial and other properties and cash valued in the many millions of dollars.

77.     By the time they were in their 80s both Gerson and Gertrude slowed down, had serious illness and were vulnerable to undue influence.  At the same time, while they were in

their eighties, Gerson and Gertrude were experiencing severe financial stress.  Their real estate

and cash fortune was compromised by a series of lawsuits and claims, some of which was

caused by Theodore.

78.     Seeing an opportunity for himself and with assistance from Barry, Theodore

embarked on a scheme to take advantage of the age, poor health and financial stress of his

parents and developed a comprehensive plan to divest Gerson and Gertrude from their assets

and into the hands of mostly, if not entirely to Theodore and some to Barry.

79.     Theodore sought out new attorneys for his parents so that he could control his

parents' new lawyer to assist Theodore in his complex plan to take complete control of all of his

parents' assets for himself and to Barry.

80.     On information and belief, Theodore did secure counsel for his parents, but this

new counsel, Gary Gitlin was actually in complicity with Theodore and acting on his behalf to

achieve his main prize, which was to remove Janice and her children from their parents' estate

plan.  On information and belief it is alleged that Gerson never met or even spoke to Gitlin, but

he purportedly represented Gerson and Gertrude at the direction of Theodore.

81.     The first step, devised by Theodore was to create complete isolation between

Gerson and Gertrude from their daughter Janice and their adult grandchildren Kele, Alexander

and Adam.  At the time this plan was first conceived, Janice and her children had a very good

relationship with Gerson and Gertrude.

82.     Theodore then instructed, and on information and belief used the letterhead of

Gitlin to write a series of nasty and slanderous letters about Janice.  The reason the letters

appear to have been written by Theodore or dictated by him or heavily revised by him is that

the contents of the letters are so slanderous and vile that it is unlikely that these letters were

actually authored by any lawyer.  These letters made up, out of the whole cloth were riddled

18
**COMPLAINT**

with ridiculous and easily disprovable lies and outright fiction that almost certainly were the brainchild of Theodore.

83.     In a letter dated October 23, 2012, a true and correct copy of which is attached as Exhibit "A" hereto and made a part hereof.  Gitlin stated that "I am special counsel for Gerson and Gertrude in connection with the Kamen litigation and related cases."  He then admitted that "I was initially brought into the equation through Ted [Theodore] as a means by which to assist in coordinating a transition from the Buchalter Nemer law firm ("BN") to replacement counsel due to the less than stellar BN representation and the difficulties facing your parents, in particular Gerson, in light of BN's ineffective services."

84.     The Gitlin letter of October 23, 2012 goes further in making it clear that Theodore was directly involved in guiding the legal activity of Gitlin, wherein his letter states "[a]s part of my assisting in the transition, it became clear that your parents, and again Gerson in particular, required someone to oversee and in effect *quarterback* the enormity and volume of litigation as most clearly attorney Richard Ormond at the BN firm failed miserably in such task.  As time proceeded, I became a bit more involved than anticipated and continue to assist Gerson and Gertrude and Gertrude <u>through and in particular Ted</u>, on the various pieces of litigation both in the bankruptcy arena as well as the civil litigation forum."

85.     This letter supports the claim that Gerson and Gertrude were vulnerable wherein it states that "Gerson, in particular, required someone to oversee and in effect quarterback the enormity and volume of litigation…"

86.     This direction by Theodore of Gitlin breaks the attorney client privilege as between Theodore and Gitlin since Gitlin's ostensible clients were Gerson and Gertrude.

87.     The Gitlin letter is an admission that Theodore selected new counsel for his parents after they had been represented for many years by their own counsel, the Buchalter Nemer law firm.  This selection of new counsel leads to a presumption of undue influence on

19
**COMPLAINT**

the part of Theodore against his vulnerable parents who at that time were not only elderly and infirm but also suffering from financial stress. What follows was an orchestrated plan by Theodore to use his imagination to create a totally fictional and slanderous picture of his sister, using Gitlin to accomplish his overall plan to take Janice out of the Fox estate.

88.     Theodore knew that his parents loved Janice and were proud of her and her family, and therefore, he needed to paint a totally false and slanderous picture of Janice. Having wrested control of Gerson and Gertrude's lawyers, Buchalter Nemer and replace them with his handpicked and controllable new lawyer, Gitlin, Theodore was able to have Gitlin write whatever Theodore wanted to accomplish his overall goal of having his parents remove Janice, once and for all, from their estate plan. Out of the whole cloth, Theodore either crafted by himself or dictated to Gitlin his smear campaign against Janice.

89.     Theodore used Gitlin to support his scheme to isolate Janice from her parents. Theodore crafted out of whole cloth a series of shameful lies about his sister and conveyed these lies to his vulnerable parents. Theodore falsely claimed that Janice was a drug user and alcoholic. He also falsely claimed that Janice physically beat her own children. These were outrageous and malicious lies concocted by Theodore to further his disgusting scheme of attempting to isolate his parents from Janice.

90.     These outright lies are provably false. There is not a single person who would confirm any of the nonsense perpetrated by Theodore, whose depravity knows no bounds. There are countless family members and close friends who can unequivocally blow this up in Theodore's face.

91.     The slander campaign could only have worked because Gerson and Gertrude were elderly and infirm and even though they had a lot of assets they were under short term financial stress and dependent on Theodore, who they were falsely led to believe was the only

20
**COMPLAINT**

one who could help them.  But more than that Gerson and Gertrude were totally dependent on Theodore because he had already begun to take over all their assets.

92.     Theodore's motivation was several fold.  He was jealous of his sister because she has a nice family, lots of close friends, and respect in the community.  Theodore, on the other hand, is a loner with almost no friends and no standing in the community.

93.     Theodore also had failed in different business ventures.

94.     Theodore saw an opportunity for a successful venture, and that was to take control of his parents' multi-million dollar estate.  As an added bonus he thought at the same time he could try to destroy the relationship Janice had enjoyed with her parents for her entire life.

95.     Before excerpts of letters from Gitlin are set out in these allegations the timeline is important.  The first letter which sets the stage for demanding complete separation of Janice from her parents is dated November 9, 2012.  In the middle of September 2012, just two months earlier, Gertrude and Janice's older brother Barry were at Janice's house for Rosh Hashanah dinner.  They both slept at Janice's house for two nights with affection and harmony.

96.     Here is what Gitlin wrote to Janice on November 9, 2012, which on information and belief was without any contact or direction from Gerson or Gertrude:

> "You (and this includes Philip) are hereby placed on notice that you are to have no further contact, directly or indirectly, with Gerson or Gertrude.  That means that you are not to contact your parents by telephone, cell phone, email, letter, nor are you invited to visit their home until you receive further instruction from me or one of their other authorized legal representatives."

A true and correct copy of the November 9, 2012 letter is attached hereto as Exhibit "B" and made a part hereof.

97.     In a third letter from Gitlin, dated November 21, 2012, a true and correct copy of which is attached hereto as Exhibit "C", Gitlin makes further threats to accomplish the goal of isolation.  On information and belief this letter was also directed by Theodore.  The November 21, 2012 letter states in pertinent part:

"I have been provided a copy of your two-page November 15, 2012 letter delivered to Gerson on Friday, November 16, 2012 (delivered by your son Alex).  I have also been made aware that you have approached and spoken with Gerson on Monday, November 19, 2012.  You have perpetrated both communications with acknowledgement of my October 23, 2012 and November 9, 2012 letters counter-signed by Gerson and Gertrude.

Notwithstanding the clarity, instruction, and specifics of both of my letters to you, you have sought to disregard the content and import of the letters and have instead deliberately communicated with Gerson (interestingly you have effected both avenues when your mother was not present) as part of your November 15, 2012 communication permeate misrepresentations, further acts of disloyalty, and otherwise questioning the veracity and authority of my communication and representation.

As apparently you require something a bit more assertive and poignant in the form of a Court Order, be advised that I have been instructed to proceed in the obtaining of a restraining order against you and Philip (and if need be your children if they intend to continue to serve as messengers and agents for your communications) and will take such actions as necessary to reaffirm, maintain integrity, and enforce the sanctity of my Clients' demand and that they be left alone and not contacted by you.

As everyone has acknowledged, *the jig is up* relative to your true ambitions and intentions.  Your parents want nothing to do with it and would much prefer for you to

22
**COMPLAINT**

simply honor their wishes and at this juncture demands, without incident, complication, or interference.

Your parents have asked that I provide one last opportunity for you to listen, understand and comply with their instructions and not to contact them… They cannot be any clearer. At this point in time you need only to forward to me your communication via email (that would be fine) confirming the acknowledgment of Gerson and Gertrude's instructions and that you agree that you will not contact them until you have been advised further-in writing and countersigned by their legal counsel- that some form of communication and relationship may be permitted to resume.

You are provided until end of Monday, November 26, 2012 to advise me in writing of your acknowledgment, understanding and compliance.  Failure to do so will result in our proceeding with obtaining the requisite restraining order and taking such further legal action as may be necessary."

And in yet another letter dated November 28, 2012, Gitlin states:

"I will again restate position of my clients… They wish to be left alone and they wish to not have any future communications or contact from Janice, Philip, or as indicated in my November 21 letter, their grandchildren (Janice's children-at least to the extent of those whom she continues to have communication as I understand that there is even estrangement within the internal workings of her own family-to the extent that such individuals are being served as the proverbial pawns and are messengers or agents on behalf of Janice (or Philip)).

Gerson and Gertrude have every right and privilege to have no communication with any of their children and in this instance is focused on their daughter Janice and her lawyer husband Philip."

The overtop posturing by Gitlin, at the direction of Theodore, comes into clear focus as predicate facts for Theodore's real intentions, which not surprisingly were actually reduced to writing.  In Gitlin's letter of September 18, 2015 Gitlin says the following, which is quite remarkable because it unabashedly states Theodore's game plan:

> "… at Gerson and Gertrude's request per this letter, they ask that you provide for the benefit of Ted [Theodor] as well as Gerson and Gertrude's legal team a full and general waiver and release of any and all claims you have or may have in connection with your parents' estate, assets, Kamen litigation, and disposition of your parents' assets."

98.     One example of the totally false and defamatory statements Theodore directed Gitlin to write in his letters is that Janice had been "conducting herself through the display of childlike tantrums, exhibiting irrational fits of rage and incoherence by reason of a history of apparent/obvious substance abuse."  This is unequivocally false and defamatory.

99.     Theodore wanted to make certain that his parents were not violating his directive that they were not to allow anyone into their house, particularly Janice, Kele, Alexander and Adam so Theodore installed a comprehensive surveillance system with a live video feed to anywhere in the world that Theodore might be.  In this way he could monitor his parents to see if they were adhering to his demands that their daughter and grandchildren not be allowed into the house.  To further isolate his bedridden parents, Theodore, with Barry's complicity placed additional locks on the outer gates of the house.

100.     On information and belief if Gertrude and Gerson violated Theodore's demands and allowed Janice and her children into the house he would reprimand and intimidate them.  Theodore was a bully to his parents and kept them in constant fear.  The fear was compounded by the fact that this time Theodore had virtually all of their assets and income and his parents were elderly, physically and mentally impaired, and completely dependent on their bully son.

24
**COMPLAINT**

101.    Theodore also monitored Gerson and Gertrude's telephone calls.  He instructed them that it was not permissible for them to be in contact with Janice and their grandchildren. Again, if they violated these commands, Theodore would reprimand and intimidate them, and on information and belief withhold money from them.  Over the last three years, Theodore took the mobile phones away from Gertrude and Gerson.  On numerous occasions, Theodore answered calls made directly to Gerson and/or Gertrude instructing the caller that they are not available to speak or on other occasions Theodore, in his presence would allow his parents to speak for less than a minute as if they were prisoners in a prisoner system with rules and regulations that must be adhered to or they would be punished.

102.    The matter escalated for Theodore when he learned in or about November of 2018 that his uncle and aunt, Rabbi Samuel Fox and Miriam Fox announced that they were flying in for the wedding of their nephew, Alexander (son of Janice) and Sarah.  Rabbi Fox is the brother of Gertrude.  They were very close and spoke almost daily.  Since they dared to come to their nephew's wedding, Theodore and Barry both put their aunt and uncle on the list of people that could no longer have any contact with Gerson and Gertrude.  This was a further escalation of Theodore's terror campaign of isolation.

103.    Likewise, when Barry learned that Rabbi Samuel Fox and Miriam Fox had decided to attend Alex's wedding, he cut off ties with both of them and their children.  Both Theodore and Barry worked together to deliberately and maliciously attempt to cut off Janice and her children from the rest of the family.  This was done so that Theodore and Barry could maintain complete isolation and control of their parents from Janice so that there could be no opportunity for reconciliation and a change of heart when it came to taking for themselves the entire multi-million dollar estate.

104.    This complete isolation and intimidation added to the extreme pain and suffering of Gertrude and Gerson.

25
**COMPLAINT**

105.     On December 25, 2020 Gertrude passed away from Covid, after Theodore had placed both of his parents in a nursing facility.  Neither had Covid when they entered the facility, but both contracted Covid while patients of the facility.

106.     Theodore concealed from Janice, Kele, Alexander and Adam the fact of their mother/grandmother's hospitalization.  Theodore further concealed Gertrude's death, the same day she was hospitalized.

107.     Through their own investigation, Janice, Kele, Alexander and Adam learned of the death and made inquiries of funeral arrangements.  They knew that Gertrude had a plot for burial at Home of Peace in East Los Angeles.

108.     Janice and others contacted Home of Peace to inquire about whether funeral arrangements had been made, but they were instructed that Theodore forbade disclosure of the funeral arrangements.  Ultimately, through further investigation, which included contacting the Chaplain of Cedars Sinai Hospital, the Jewish organizations that handle burial in accordance to Jewish law it was discovered that the funeral would most likely occur on Sunday, December 27, 2020.  The time of burial was still unknown.  The director of Home of Peace was then contacted by family members, community rabbis and friends to inquire as to the date and time of the funeral.  Ultimately, Home of Peace informed them that the burial would be at 2:00 pm on Sunday, December 27, 2020, or sooner.

109.     Janice and her family members arrived to Home of Peace early on Sunday morning at around 11:00 am just in case Theodore was up to his usual deception even with regard to the sacred duty under Jewish law of participating in the burial of a mother/grandmother. Sure enough, at approximately 12:40 pm a Rabbi showed up for the burial.  The Rabbi informed Janice and other family members that he had serious doubts that the funeral would take place because Theodore was very upset that family members had learned of the funeral arrangements.  The Rabbi told the family that Theodore would not go

forward with the burial unless the family left.  The Rabbi told some of those assembled that Theodore was prepared and threatened to have the body of his mother taken back to the morgue and buried at a different time of his choosing without disclosure to the rest of the family.

110.     Ultimately, after a lot of back and forth, a compromise was agreed to whereby Janice and all of Janice's family and her many friends that came to pay their respects agreed to leave and be out of sight while Theodore had his own private burial.  Theodore's only two guests were his lawyers.  The agreement was that after Theodore completed his burial service, which included lowering his mother's body into the grave and shoveling dirt on the casket, that Janice and her family could conduct their own service.  Unfortunately, Theodore's threats and bullying paid off for him even in the solemn occasion of his mother's death.

111.     As recently as while this lawsuit was being prepared Janice, through her counsel received a letter dated January 19, 2021 from a lawyer from the rehab center where Gerson is a resident advising Janice that "Mr. Fox's [Gerson] legal decision maker [Theodore] has requested a restriction on who can obtain his confidential information and who can act with him." Literally, the isolation continues to occur to this day, and has actually escalated in recent months.

112.     Janice, was unaware until after the death of her mother on December 25, 2020 that the entire isolation plan was devised and implemented so that Theodore and Barry could take, secrete and own for themselves the entire multi-million dollar estate while their parents were still alive.

113.     Theodore and Barry, by their alleged acts, including without limitation, the isolation of both Gerson and Gertrude by controlling and negating their ability to speak to their daughter, Janice; their grandchildren, Kele, Alexander and Adam; Gertrude's brother, Rabbi Samuel Fox and sister-in-law Miriam Fox and other family members whether in person or by

27
**COMPLAINT**

telephone, have greatly injured Janice both physically and emotionally by an amount in excess of $1,000,000.00, exclusive of costs and interest to be determined at trial.

114.    Pursuant to *Probate Code* § 259 both Theodore and Barry should be considered by operation of law to have predeceased Gertrude and Gerson and therefore should not (1) receive any property, damages, or costs that are awarded to Gertrude's estate in this action, whether their entitlement is under a will, a trust, or the laws of intestacy; or (2) serve as a fiduciary as defined in Section 39, if the instrument nominating or appointing Theodore or Barry was executed during the period when Gertrude was substantially unable to manage her financial resources to resist fraud or undue influence.

115.    The acts by Theodore and Barry of physical neglect and isolation as described above were done with recklessness, oppression, fraud or malice entitling Janice to punitive or exemplary damages to punish and set an example of Theodore and Barry.

116.    Janice is entitled to an award of reasonable attorney's fees pursuant to *Welfare and Institutions Code* § 15657.

## SECOND CAUSE OF ACTION

### (FINANCIAL ELDER ABUSE)

### [Janice v. Theodore and Barry]

### *Welfare and Institutions Code* §§ 15610.30 and 15657.5

117.    Janice incorporates by reference paragraphs 1 through 116 and realleges same as if fully set forth herein.

118.    At all times relevant herein Gerson and Gertrude were elders as that term is defined in *Welfare and Institutions Code* § 15610.27 as they were in their 80s and then in their 90s while Theodore and Barry continuously, deliberately and maliciously isolated them from their daughter, grandchildren, brother and other extended family members and friends.

119.     As "elders" within the class protected by *Welfare and Institutions Code* § 15600 et seq., Gerson and Gertrude are entitled to heightened and special statutory protections against financial abuse.

120.     Notwithstanding their knowledge that Gerson and Gertrude were elders, Theodore and Barry actually took advantage of their elderly status, poor health, and financial stress to commit financial elder abuse by using manipulation, undue influence, breach of fiduciary duty, fraud, misrepresentations, intimidation, coercion and trickery as more fully set out in the next two paragraphs.

121.     Gerson and Gertrude were also in their 80s and 90s when Theodore and Barry set up a complex set of limited liability companies, wholly owned and controlled by Theodore to act as shields from their individual conduct as they used these companies to take, secrete, appropriate, obtain and retain to this day virtually all of the assets of their elderly and vulnerable parents.

122.     In furtherance of their continuous acts of financial elder abuse, Theodore has himself installed as trustee of Bearbiz and Special Trustee of the Fox Family Trust where he was able to completely control all of the assets once owned by Gertrude and Gerson.

123.     At all relevant times when Theodore was both a trustee and beneficiary of the Fox trusts he completely and deliberately ignored and disregarded his fiduciary duties to the trustors, his parents and to the beneficiaries, including Janice, by among other things, not making disclosure regarding the assets, liabilities and income of the trust properties, not rendering an accounting, concealing from the beneficiaries Theodore's incredibly inflated compensation package as special trustee of the Fox Family Trust, which was actually a subterfuge for an attempt to wipe out all equity of the Fox estate.  Theodore further did not disclose his conflict of interest in being trustee of the Fox Family Trust and Bearbiz, while at the

same time he acquired and attempted to levy on millions of dollars to claims against the assets of both trusts and as against Gerson and Gertrude, individually.

124. Integral to Theodore and Barry's plan of financial abuse was keeping all of their acts in secrecy so that Janice would be unable to discover their intentional scheme to raid and take for themselves the assets and income of Gertrude and Gerson.

125. Their designed plan of secrecy worked, at least until the aftermath of the funeral of Gertrude where Theodore's extreme conduct to deny his sister and the grandchildren the solemn participation in the passing of a loved one prompted a full scale investigation into the potential financial improprieties of Theodore and Barry.

126. In or about January 2021 it was discovered that Theodore used the Fox Family Trust and Bearbiz as mere instrumentalities for his carefully designed and orchestrated plan to take for himself the bulk of Gertrude and Gerson's personal assets and income and to obtain Barry's agreement to keep all of this secret from Janice and the grandchildren he left some minimal assets for Barry.

127. It was also discovered that Theodore went even further with his malicious scheme to take control and ownership of all of his parents' assets when he used his company, Ultimate Action to acquire all of those assets by using a strawman buyer to purchase judgments, charging liens and other claims against his parents from third party creditors.

128. Theodore then utilized step two of his plan of financial abuse when he commenced actions to foreclose on assets of his parents using judgments, charging liens and other claims to take substantially all of their assets for himself.

129. To this day, Janice is in the dark as to where the money came from and used by Theodore, through his company Ultimate Action to purchase approximately $20 Million in creditors' claims against Gerson and Gertrude.

30
**COMPLAINT**

130.    On information and belief, it is most probable that Theodore used some type of fraud or trickery to use assets or money of his parents to purchase the $20 Million of creditor claims against them.

131.    The money that was used by Theodore to purchase the creditors' claims remains a mystery because Theodore has used multiple strawmen so as not to have this scheme uncovered.

132.    This entire scheme and acts of financial abuse was orchestrated and concealed by Theodore, all in breach of fiduciary duties to make full disclosure and act with the utmost honesty and integrity.

133.    The conduct of Theodore was done with the utmost dishonesty and lack of integrity and so far he has gotten away with his bullying, intimidation, financial abuse and breach of his fiduciary duties.

134.    Janice is informed and believes that Ultimate Action was used by Theodore, in breach of his fiduciary duties to both the Fox Family Trust and Bearbiz and all of the beneficiaries of both trusts to buy substantial creditor judgments, charging liens and other liens recorded and/or claimed against his father Gerson and mother Gertrude in a four step process.

135.    First, Theodore used an intermediary to purchase the judgments, charging orders and liens that were asserted against Gerson and Gertrude.  Second, Theodore purchased those judgments, charging orders and liens from the intermediary totaling in value in excess of $20 million, for a fraction of their face value.  Third, Theodore, through his wholly owned company, Ultimate Action, asserted these same claims, liens, charging orders and assignments of judgments against his parents, Gerson and Gertrude at full value.  Fourth, Theodore obtained writs of executions, orders for appearance of judgment debtor against Gerson and Gertrude and an application for sale of dwelling against Gertrude and/or against her trust.  All the while Theodore was in a fiduciary relationship with Gerson and Gertrude as he was a trustee and

31
**COMPLAINT**

special trustee of the Fox Family Trust and the Bearbiz Irrevocable Trust as well as being the major beneficiary of those two trusts.

136.    The transactions by which Ultimate Action purchased the creditor claims, first through an intermediary and then a purchase by Ultimate Action from the intermediary was concealed by Theodore from the time he conceived this ideal all the way to the present. It is still unknown the source of the money used by Ultimate Action to purchase several million dollars of assets.

137.    On information and belief, the money most likely came, through some circuitous route from properties or assets once owned by Gerson or one of his many limited liability companies and then routed to one of Theodore's companies.

138.    Janice is informed and believes and based thereon alleges that on or about July 17, 2006 Gerson and Gertrude created a Special Trustee Agreement.  This Special Trustee Agreement was created through undue influence and coercion by Theodore for the compensation of Theodore at levels that are far beyond anything that would ever be considered reasonable so as to deliberately strip the Fox estate from Janice and partly from Barry, and to accelerate and advance the entire corpus of the estate directly to Theodore prior to the death of the settlors.

139.    The Special Trustee Agreement recites that the effective date of the agreement is as of August 1, 2011 and shall continue in force for a period of 10 years and therefore by its terms is still in force and effect.  Thereafter, it recites that the agreement shall be renewed automatically for successive terms of three years unless either party gives written notice to the other party at least 90 days prior to the expiration of any term of such party's intention to renew.

140.    The compensation structure to Theodore from the Special Trustee Agreement began at $75,000 per month as of August 11, 2011 and provides that Theodore's compensation will increase every year by an additional $10,000 per month.  Based on the formula the monthly

32

**COMPLAINT**

compensation is currently $165,000 per month or $1,980,000 per year.  The compensation

continues to either get paid or accrues for the entire 10 years plus renewals regardless of

whether there is any work activity required by the trust.

141.    The Special Trustee Agreement further provides that "payments shall be made

only to the extent that there is reasonably available cash from the Fox Properties' operations as a

whole… If cash is not available, such unpaid salary will accrue (without interest) until the Trust

is able to make such payments to Special Trustee.  Both the Trustees and that Special Trustee are

mindful of the possibility that all or part of the compensation of the Special Trustee may not be

paid, in whole or part, to the Special Trustee due to the problems with the Fox Properties.  The

Special Trustee has agreed to accept that risk but the Trustees wanted to be clear the

compensation to be paid to the Special Trustee is to be paid before any distributions are made to

their heirs." The agreement further provides that the Special Trustee shall be paid as additional

compensation $500,000 for past services provided.

142.    The compensation to Theodore was a device created and structured by Theodore

such that the accumulated compensation over the last 10 years would be used to diminish or in

fact eliminate all assets of the Gerson and Gertrude estate so as to effectively wipe out any

interest that Janice may have inherited as an heir to the Fox estate. The cumulative total either

paid or accumulated for the benefit of Theodore over the last 10 years now stands at

approximately $11,780,000.00.  This compensation package was the product of undue influence

and coercion and is just one part of the massive financial abuse perpetrated by Theodore against

his elderly and ill parents as part of his elder abuse.

143.    Theodore and Barry owed Janice a fiduciary duty of honesty, full disclosure,

good faith and fair dealing.  Theodore and Barry committed financial elder abuse when they

knowingly and willfully breached that duty in order to take for themselves nearly the entire

estate of their parents, while they were still alive and to also make certain that Janice would be taken out of the estate as a beneficiary.

144. In further breach of fiduciary duties owed by Theodore and Barry to Janice all of these underhanded and circuitous financial transactions were done in concealment and malice.

145. Further, Theodore and Barry took the estate assets through their outright financial abuse, fraud and/or breach of fiduciary duty without having to wait for a triggering event of death of their parents and also to assure that by the time of their death that even if Gerson and Gertrude wanted to revise their estate plan to include bequests to Janice, Kele, Alexander and Adam that there would be no assets left in the estate.

146. Theodore's conduct, in which, on information and belief, Barry participated, constituted financial elder abuse in accordance with *Welfare and Institutions Code* § 15610.30(a).

147. Theodore and Barry's predatory practices unlawfully misappropriated Janice's property, constituted financial abuse and caused Gertrude and Gerson to suffer special and general damages, including substantial emotional distress and frustration pursuant to *Civil Code* § 3345.

148. As an elder, the above-described facts also entitle Janice to recover treble damages.

149. As a direct and proximate result of Theodore and Barry's conduct, Janice has incurred and will continue to incur attorneys' fees and related expenses in an amount to be proven at trial. Janice therefore seeks all of those fees and costs pursuant to *Welfare and Institutions Code* § 15657.5.

150. Theodore and Barry planned and engaged in their pattern of financial elder abuse with malice, oppression and fraud as those terms are defined by *Civil Code* § 3294, entitling Janice to an award of punitive damages.

## THIRD CAUSE OF ACTION

## (BREACH OF FIDUCIARY DUTY)

### [Janice against Theodore]

151.    Janice incorporates by reference paragraphs 1 through 150 and realleges same as if fully set forth herein.

152.    At all times relevant herein, Theodore was Special Trustee of the Fox Family Trust as well as trustee of Bearbiz.

153.    At all times relevant herein, it is alleged on information and belief that Janice, Kele, Alexander and Adam were beneficiaries of the Fox Family Trust and Bearbiz.

154.    The Special Trust Agreement of the Fox Family Trust provides that the "Trust has a substantial portfolio of real estate and other investments, including, but not limited to, real properties and real property only entities collectively referred to as the "Fox Properties."

155.    Section "C" of the Trust recites that "Ted's [Theodore] compliance with their [trustees] wishes may potentially place him in a difficult position with respect to their other children and, accordingly, they wish to address those and other issues in this Agreement and their Trust."

156.    The Trust gives Theodore broad powers including leasing activities, rent collection, payment of expenses, hiring, directing and controlling agents, attorneys, accountants, employees or assistants as reasonably appropriate, commencing, directing, settling and resolving litigation, maintaining accurate books and records, ensuring that proper federal, state and local tax returns, interaction with lenders and investors, and to locate and recover properties that have been lost by the trustee.

157.    The compensation package provided for in the Special Trustee Agreement generally provided for escalating monthly compensation which today stands at $165,000 per

month or nearly $2 Million per year.  In addition the Special Trustee Agreement provides for additional compensation of 40% of profits of the Fox real estate portfolio.

158.    In addition to the monthly fees compensation was provided by the trust to Theodore to cover health care costs, including dental and vision coverage and a gym membership at Equinox, Sports Club, etc. gas and vehicle maintenance, meals, travel (including business class travel)

159.    Further, the compensation package provides that if there is not sufficient money to pay this enormous compensation then Theodore will be paid before any distributions are made to the other heirs.

160.    The Special Trustee Agreement further provides that the "Trustees shall have the option to pay any additional compensation due to Special Trustee [Theodore] by transferring to Special Trustee a fractional or whole interest in any real property owning entity within the Fox Properties; provided however, that of such interest shall be subject to the reasonable approval of the Special Trustee…"

161.    Approximately two months after the Special Trustee Agreement became effective on November 28, 2011, an eighth amendment to the Fox Family Trust was executed whereby Theodore was given unilateral power to withdraw/borrow money from the Fox Family Trust for any trust purpose.

162.    As Special Trustee, Theodore was a fiduciary with regard to the other beneficiaries, including Janice.  As a fiduciary, Theodore had a legal obligation to make full disclosure regarding the assets he was managing on behalf of all of the beneficiaries.  To this date, Theodore has failed to render any type of accounting or any kind since he became Special Trustee. Janice has not received a single statement or accounting from Theodore at any time.

163.    Janice made inquiry of Theodore to render an accounting and status of the Fox Properties, but Theodore refused to provide any accounting.  Instead, on information and belief,

**COMPLAINT**

Theodore used this request as a vehicle to use undue influence against Gerson and Gertrude, causing them to remove Janice as a beneficiary from their estate plan.

164.   Affixed to the Special Trustee Agreement was a list of properties held in the Trust, and this list of properties was initialed by Gerson, Gertrude and Theodore.  To this date, Theodore has not furnished any information regarding the status of any of the properties for which he was appointed Special Trustee regarding income and expenses, whether the loans are current, whether any of the properties are in foreclosure, whether any of the properties have been refinanced, whether any of the properties have been sold.

165.   Further, Theodore has made no disclosure concerning whether he has been paid compensation pursuant to the agreement or for that matter whether the agreement is still in force and effect and whether he is still managing the portfolio, if any.  Theodore has also not made disclosure as to whether he has been paid the compensation recited in the agreement or whether that compensation was deferred or whether he has received a percentage of profits or whether he has received an interest in any of the properties of the Fox estate.

166.   Theodore knew that as Special Trustee that he was in a fiduciary relationship with the beneficiaries of the Fox Family Trust. Theodore, was also concerned that he had violated fiduciary duties as Special Trustee. As a result of those concerns on August 28, 2011, Theodore sent an email to Gerson's counsel preparing the power of attorney forms and the Special Trustee Agreement stating: "In conclusion… let's make sure I'm protected as a fiduciary anticipating a claim on my performance."

167.   Janice is informed and believes that beginning in June 7, 2012 Ultimate Action began acquiring judgments against Gerson despite Theodore owing fiduciary duties to Gerson, Gertrude, Janice, Kele, Alexander and Adam pursuant to the Special Trustee Agreement and the power of attorney.

168.    On June 25, 2012, Ultimate Action and Gerson entered into a stipulated judgment in Covina Palms action, the amount $18.5 million – over $7 million more the prospective judgment in that action.

169.    In total, Ultimate Action asserted secured claims against Gerson of $17,473,000.00. These claims were asserted, notwithstanding the fiduciary relationship, and it further impaired and effectively wiped out the interest of Janice, Kele, Alexander and Adam in the Fox Family Trust.

170.    In further breach of his fiduciary duties, Janice is informed and believes that Theodore, acting through his entities Ultimate Action and TF Properties #2, acquired Gerson's interest in twenty-two of the entities itemized on the asset list attached to the Special Trustee Agreement.

171.    Janice is currently unaware of the total amount of money and number of properties that has been obtained by Theodore by and through enforcement and collection actions while acting under his entities Ultimate Action, TF Properties #2 and #3 and/or Supreme Studios.

172.    Janice is informed and believes and based thereon alleges that Theodore's acquisition of judgments and assertion of liens against Gerson, were in violation of the fiduciary duties Theodore owed to the beneficiaries, thus giving rise to damages for breach of fiduciary duty in an amount to be determined at trial.

173.    Theodore acted with malice, oppression and fraud as those terms are defined by *Civil Code* § 3294, entitling Janice to an award of punitive damages.

/ / /

/ / /

/ / /

/ / /

**COMPLAINT**

## FOURTH CAUSE OF ACTION

### (CONSTRUCTIVE TRUST)

### [Janice Against Theodore]

174.    Janice hereby incorporates by reference paragraphs 1 through 173 and realleges these paragraphs as though set forth in full.

175.    Janice is informed and believes and thereon alleges that Theodore misused his position as trustee of the Fox Family Trust and Bearbiz by acquiring assets and cash that belonged to the two trusts, without giving the beneficiaries of the trusts any accounting.

176.    Janice contends that any property real or personal acquired by Theodore in breach of his fiduciary duties under the two trusts have imposed upon said property a constructive trust in favor of Janice.

## FIFTH CAUSE OF ACTION

### (UNJUST ENRICHMENT)

### [Janice Against Theodore]

177.    Janice hereby incorporates by reference paragraphs 1 through 176 and realleges these paragraphs as though set forth in full.

178.    As a direct and proximate result of Theodore's wrongful conduct as alleged herein Theodore has been unjustly enriched and Janice as been damaged in an amount according to proof at time of trial together with prejudgment interest thereon at the maximum rate provided by law.

## SIXTH CAUSE OF ACTION

### (INVALIDITY OF TRUST AMENDMENT – WILL CONTEST)

### [Janice Against Theodore and Barry]

179.    Janice hereby incorporates by reference paragraphs 1 through 178 and realleges these paragraphs as though set forth in full.

180.    In 2006 Gerson and Gertrude, as settlors created the Fox Family Trust, naming as beneficiaries, their three children, Barry, Janice and Theodore each to receive one-third of the estate with monetary bequests of $100,000 to each of their four grandchildren and smaller monetary bequests to other third parties.

181.    The Fox Family Trust continued to name as beneficiaries Janice, Kele, Alexander, Adam and the others, intact through 2011 and maybe into part of 2012.  The reason that a date cannot be pinpointed is that neither the settlors, nor Theodore as trustee has kept the beneficiaries informed.

182.    After the death of Gertrude on December 25, 2020, Janice through her counsel has made inquiries of Theodore, through his counsel for disclosure of the original trust documents and all amendments and iterations.  Those requests have been denied.

183.    On information and belief, Gerson and Gertrude amended their trust to remove and eliminate any bequests to Janice, Kele, Alexander and Adam from the estate plan.

184.    On information and belief the amendment removing these beneficiaries occurred after August 2011.

185.    The amendment to the Fox Family Trust was the product of undue influence, slander, breach of fiduciary duties by Theodore; the unlawful taking of the majority of the estate by Theodore; the conflicts of interest of Theodore, the coercion, intimidation and bullying by Theodore.  On information and belief, all of these actions by Theodore were done with the direct participation by Barry.

186.    The actions of Theodore as set out throughout this Complaint, including his take over of the estate, his outrageous compensation package as trustee, his wholesale violation of his fiduciary duties of two different trusts, his failure to make any disclosure to the beneficiaries of the trusts, his treatment of trust assets as if they were all his to the exclusion of the beneficiaries, his control and/or direction to lawyers ostensibly representing Gerson, Gertrude

40
**COMPLAINT**

and the trusts, his direct involvement in procuring the amendments removing Janice, Kele, Alexander and Adam from the estate, with the direct participation by Barry, led to these heirs being removed as beneficiaries.

187.    The breaches of fiduciary duties and the fact that Theodore was directly involved in procuring and directing the trust lawyers, for his own benefit leads to a presumption of undue influence in making the amendments that removed Janice, Kele, Alexander and Adam as trust beneficiaries.

188.    Janice is informed and believes and on that ground alleges that Theodore has wrongfully taken, secreted, misappropriated and/or retained real property and personal property belonging to Gertrude and Gerson, which Theodore would not have obtained absent his wrongful conduct.

189.    Theodore's wrongful conduct caused Gertrude and Gerson to execute the amendments which purport to distribute Gertrude's estate in a manner that Gertrude would not have provided for absent Theodore's wrongful conduct.  In causing Gertrude to execute the amendments Theodore deprived Gertrude of the valuable right to distribute her estate in equal shares to her two children as she truly intended.  In taking these actions, Theodore deprived Janice of an interest in the real property located at 337 S. Roxbury Dr., Beverly Hills, California 90212 which Gertrude owned in its entirety, and the property at 15300 E Smoky Hill Rd, Aurora, Colorado 80015 which Gertrude owned through Shops at Shenandoah Shopping Center, LLC, a limited liability company, and any other assets, real or personal that she owned at the time of her death.  Janice is entitled to restoration of her one-third interest in the estate of Gertrude, and in the event that she prevails in her elder abuse claims as alleged herein, she is entitled to one hundred percent of the estate, by virtue of the principle that because of the elder abuse, Theodore and Barry are regarded as though they predeceased Gertrude and are disinherited. *Probate Code §259.*

190.    In taking the above wrongful actions, Theodore acted in bad faith.

## SEVENTH CAUSE OF ACTION

### (INTENTIONAL INTERFERENCE WITH EXPECTATION OF INHERITANCE)

### [Janice Against Theodore and Barry]

191.    Janice hereby incorporates by reference paragraphs 1 through 190 and realleges these paragraphs as though set forth in full.

192.    Janice is the daughter of Gerson.

193.    Janice has enjoyed a close relationship with Gerson over many years.

194.    In 2006, Gerson and Gertrude were settlors of the Fox Family Trust.  On information and belief, that trust provided among other things that Janice was to receive one-third of the trust assets upon the death of the settlors.

195.    Janice has a reasonable expectation to inherit a one-third portion of the estate of Gerson because, on information and belief, the trust documents so provided from 2006 through and including 2011 and she is the only daughter of Gerson.

196.    Theodore knew of the inheritance for Janice and he deliberately devised and carried out a systematic plan of undue influence, slandering of Janice, stealing of the trusts, and he intimidated and bullied his parents into eliminating Janice from the estate plan.

197.    On information and belief, Janice alleges that through the deliberate acts of Theodore, including his outright breach of fiduciary duties as to the Fox Family Trust and Bearbiz, his raiding of the assets of both trusts, his slander of Janice, and his conduct as described throughout this Complaint, he caused Gerson to change his estate plan and eliminate his bequest to Janice.

198.    As a result of Theodore's interference with expectation of inheritance Janice has been damaged in that but for that interference she would have received one-third of Gerson's estate.

199.     Janice's one-third of her inheritance expectancy was further diminished by Theodore's usurpation of the trust assets by his conduct as described throughout this Complaint.

200.     The acts taken by Theodore were malicious and intentional and meant to harm Janice.  Theodore and Barry also knew that Gerson was a senior, and *Civil Code* § 3345 is triggered, as are punitive damages under *Civil Code* § 3294.

## EIGHTH CAUSE OF ACTION

### (ACCOUNTING)

### [Janice Against Theodore]

201.     Janice hereby incorporates by reference paragraphs 1 through 200 and realleges these paragraphs as though set forth in full.

202.     In breach of his fiduciary duties owed to Janice vis-à-vis the Fox Family Trust and Bearbiz, Theodore took money and assets that should have gone to Janice as a beneficiary of these trusts.

203.     Janice seeks an accounting of all monies that Theodore took or made unavailable to Janice from the trusts.

## NINTH CAUSE OF ACTION

### (INVALIDITY OF SPECIAL TRUSTEE AGREEMENT)

### [Janice Against Theodore]

204.     Janice, incorporates by reference paragraphs 1 through 203 and realleges these paragraphs as though set forth in full.

205.     The Special Trustee Agreement was the product of undue influence, slander, breach of fiduciary duties by Theodore; the unlawful taking of the majority of the estate by Theodore; the conflicts of interest of Theodore and the coercion, intimidation and bullying by Theodore.

206.    The compensation package provided to Theodore was outrageous, unconscionable, unreasonable and was a thinly disguised attempt by Theodore to strip the substantial assets once owned by Gerson and Gertrude from their estate so that Theodore could accelerate his inheritance and wipe out all equity of his parents' estate so that the estate would have no assets or income for Gerson and Gertrude making them dependent on Theodore for their needs, and to further to make certain that there would be no assets left for Janice to inherit.

207.    Further, the Special Trustee Agreement was an integral part of Theodore's scheme to have complete control of Gerson and Gertrude and was used as leverage by Theodore to coerce his parents into eliminating Janice, Kele, Alexander and Adam as beneficiaries of their estate.

208.    The creation of the Special Trustee Agreement was the product of undue influence as Theodore had direct involvement in procuring lawyers to draft the agreement. Theodore also directly crafted the terms for his own benefit.

209.    In taking the above wrongful actions, Theodore acted in bad faith.

## TENTH CAUSE OF ACTION

### (INVALIDITY OF BEARBIZ IRREVOCABLE TRUST)

### [Janice Against Theodore]

210.    Janice hereby incorporates by reference paragraphs 1 through 209 and realleges these paragraphs as though set forth in full.

211.    The creation of Bearbiz is invalid for several reasons.

212.    First, it was the product of undue influence, slander, breach of fiduciary duties by Theodore; the unlawful taking of the majority of the estate by Theodore; the conflicts of interest of Theodore and the coercion, intimidation and bullying by Theodore.

213.     Second, Janice is informed and believes and thereon alleges that Gerson received no consideration from Bearbiz in exchange for his transfer of the Membership Interests to Bearbiz estimated to be worth many millions of dollars.

214.     Third, Janice is informed and believes and thereon alleges that Bearbiz was conceived of and created by Theodore as a device to siphon off the estate of Gertrude and Gerson to Theodore and a small portion, if any remaining, to Barry.

215.     Fourth, the creation of Bearbiz was a thinly disguised attempt by Theodore to strip the substantial assets once owned by Gerson and Gertrude from their estate so that Theodore could accelerate his inheritance and wipe out all equity of his parents' estate so that the estate would have no assets or income for Gerson and Gertrude making them dependent on Theodore for their needs, and to further to make certain that there would be no assets left for Janice to inherit.

216.     In taking the above wrongful actions, Theodore acted in bad faith.

## ELEVENTH CAUSE OF ACTION

### (CIVIL RICO)

### [Janice Against All Defendants]

217.     Janice hereby incorporates by reference paragraphs 1 through 216 and realleges these paragraphs as though set forth in full.

218.     Defendants, and each of them, in taking the actions alleged herein, engaged in a pattern of racketeering activity, including without limitation by (a) investment of income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated as principals, and/or the proceeds of that income, in acquisition of an interest in or the establishment or operation of one or more enterprises engaged in, or the activities of which affect interstate or foreign commerce, in violation of 18 U.S.C. §1962(a); (b) by acquiring or maintaining, directly or indirectly, through a

45

**COMPLAINT**

pattern of racketeering activity or through collection of an unlawful debt, an interest in or control of one or more enterprises engaged in, or the activities of which affect interstate or foreign commerce, in violation of 18 U.S.C. §1962(b); (c) by conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt , in violation of 18 U.S.C. §1962(c); and (d) by conspiring to violate 18 U.S.C. §1962(a), (b), and/or (c).

219.    To accomplish the foregoing, Defendants, and each of them, committed a series of related predicate acts over a substantial period of time, and they continue to threaten to commit such acts.  Such acts are and have at all times alleged herein been continuous and interrelated, having similar goals, purposes, methods, and/or results.

220.    Defendants, and each of them, acted with the requisite culpable *mens rea* in that they were aware that they actually committed the violations alleged herein and conspired to do so, intentionally and with knowledge that their actions were wrongful and illegal.

221.    Defendants, and each of them, worked together in furtherance of a common illegal interest.

222.    On information and belief, Defendants, and each of them, committed predicate acts including without limitation mail and wire fraud, embezzlement, money laundering, extortion (including without limitation by threatening to withhold funds, care and necessities from Gerson and Gertrude) and bribery (including without limitation by offering to provide funds, care and necessities to Gerson and Gertrude) in the furtherance of their illegal goals.

223.    Janice has been injured in her business or property (including concrete financial losses) by reason of the violations of 18 U.S.C. §1962 by Defendants, and each of them, as herein alleged.  Her injuries have been proximately caused by said violations.

224.    Janice is entitled pursuant to 18 U.S.C. §1964 to (a) an order requiring Defendants, and each of them, to divest themselves of any interest, direct or indirect, in the foregoing

46
**COMPLAINT**

enterprises; (b) an order imposing reasonable restrictions on the future activities or investments of Defendants, and each of them, including without limitation prohibiting them from engaging in the same type of endeavor as the enterprises engaged in; (c) an order dissolving or reorganizing said enterprises; (d) threefold (treble) the damages that she has sustained; (e) costs of suit; and (f) reasonable attorneys' fees.

## TWELFTH CAUSE OF ACTION

### (ACCOUNTING)

### [Janice Against Theodore]

225.     Janice hereby incorporates by reference paragraphs 1 through 224 and realleges these paragraphs as though set forth in full.

226.     In breach of his fiduciary duties owed to Gertrude, Theodore took money and assets from her.

227.     Janice is entitled to an accounting and seeks an accounting of all monies that Theodore took from Gertrude.

## THIRTEENTH CAUSE OF ACTION

### (ACCOUNTING)

### [Janice Against Theodore, Bearbiz, Ultimate Action, Supreme Studios, TF Properties 2 and TF Properties 3 and Roes 1 through 100]

228.     Janice hereby incorporates by reference paragraphs 1 through 227 and realleges these paragraphs as though set forth in full.

229.     Janice is informed and believes and based thereon alleges that Theodore used his entities, including without limitation Bearbiz, Ultimate Action, Supreme Studios, TF Properties 2 and TF Properties 3 and Roes 1 through 100, in his scheme to take money from his parents in an unconscionable and outrageous way, including by using these entities to buy creditor judgments, charging liens and other liens recorded and/or claimed against Gerson and/or

Gertrude, and to conceal his own financial interest in and ownership and control over those entities so that he could complete this financial elder abuse as alleged hereinabove.

230.    Janice is informed and believes and based thereon alleges that Theodore used his entities, including without limitation Bearbiz, Ultimate Action, Supreme Studios, TF Properties 2 and TF Properties 3 and Roes 1 through 100 are and at all relevant times were alter egos of Theodore and mere instrumentalities used by Theodore to accomplish his unsavory purposes.

231.    Janice is entitled to an accounting and seeks an accounting of of all monies received by or paid by Bearbiz, Ultimate Action, Supreme Studios, TF Properties 2 and TF Properties 3, including without limitation an accounting showing the origin and disposition of the funds used by Defendants to buy creditor judgments, charging liens and other liens recorded and/or claimed against Gerson and/or Gertrude.

<u>**FOURTEENTH CAUSE OF ACTION**</u>

**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)**

**[Janice Against Theodore]**

232.    Janice hereby incorporates by reference paragraphs 1 through 227 and realleges these paragraphs as though set forth in full.

233.    The actions of Theodore in preventing Janice or her children from being able to visit Gerson or Gertrude or to communicate with them, the concealment of Gertrude's death from Janice, the prevention of Janice from attending or participating in the funeral and burial of her mother, Gertrude, the threat to postpone the burial of Gertrude in violation of Jewish religious law in order to prevent Janice and her family from attending, and the other outrageous related actions of Theodore alleged hereinabove constituted extreme and outrageous conduct with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to Janice, and as a result of that outrageous conduct, Janice suffered severe and extreme

48

**COMPLAINT**

emotional distress, which was and is substantial and enduring.  The proximate cause of the severe and extreme emotional distress was the outrageous conduct of Theodore.

234.     The behavior of Theodore was outrageous because he abused a relation or position which gave him power to cause damage to Janice, he knew that Janice was susceptible to injuries through mental distress, because of the circumstances as alleged herein in which Janice had a close and loving relationship with her parents prior to Theodore's malicious interference, and because of the predictable upset that Janice had when learning of her mother's death and the fact that her brother Theodore had concealed it and the location and time of the funeral from her.  Furthermore, Theodore acted intentionally and unreasonably with the recognition that his acts were likely to result in illness through mental distress to Janice. Moreover, Theodore's conduct was extreme and outrageous because he knew that Janice was peculiarly susceptible to emotional distress at the time, due to the foregoing circumstances, which caused her to have physical and mental conditions and/or peculiarities that made her so susceptible.

235.     Theodore engaged in the foregoing conduct with malice, oppression and fraud as those terms are defined by *Civil Code* § 3294, entitling Janice to an award of punitive damages.

## PRAYER

**WHEREFORE**, Janice prays that judgment be entered as follows:

1. On the First Cause of Action, for general damages for pain and suffering pursuant to *Welfare and Institutions* Code § 15657(b), for damages under *Welfare and Institutions* Code § 15610.43 and an award of reasonable attorneys' fees pursuant to *Welfare and Institutions* Code § 15657(a), and for punitive or exemplary damages to punish and set an example of Theodore and Barry;

2. On the Second Cause of Action, for general damages for pain and suffering pursuant to *Welfare and Institutions* Code § 15657.5(b), for damages under *Welfare and Institutions*

**COMPLAINT**

Code § 15610.43 and an award of reasonable attorneys' fees pursuant to *Welfare and Institutions* Code § 15657(a), and for punitive or exemplary damages to punish and set an example of Theodore and Barry;

3. On the Third Cause of Action, for damages in an amount to be determined at trial for Defendant Theodore Fox's breaches of fiduciary duty, and for punitive or exemplary damages to punish and set an example of Theodore;

4. On the Fourth Cause of Action, for imposition of a constructive trust in favor of Janice on any property real or personal acquired by Theodore in breach of his fiduciary duties under the two trusts and for a preliminary and permanent injunction prohibiting Defendants, or any of them, from selling, conveying, encumbering or transferring any interest in any of the real or personal property acquired by Theodore from Gerson or Gertrude, including but not limited to the real property located at 337 Roxbury Dr. , Beverly Hills, California or the real property located at 15300 E Smoky Hill Rd, Aurora, Colorado 80015.

5. On the Fifth Cause of Action, damages in an amount according to proof at time of trial together with prejudgment interest thereon at the maximum rate provided by law;

6. On the Sixth Cause of Action, for declaratory relief finding the amendments to the Fox Family Trust removing and eliminating any bequests to Janice to be invalid, and for the restoration of Janice's one-third interest in the estate of Gertrude, including but not limited to the real property located at 337 Roxbury Dr., Beverly Hills, California and the real property located at 15300 E Smoky Hill Rd, Aurora, Colorado 80015 and any other real or personal property or assets in Gertrude's estate at the time of her death or thereafter, and, in the event that Defendants are found to be liable for elder abuse and therefore disinherited pursuant to *Probate Code §259*, for one hundred percent of the estate.

50
**COMPLAINT**

7. On the Seventh Cause of Action, for damages in the amount to be determined at trial and for punitive or exemplary damages to punish and set an example of Theodore and Barry;

8. On the Eighth Cause of Action, an accounting of all monies that Theodore took or made unavailable to Janice from the trusts;

9. On the Ninth Cause of Action, for declaratory relief finding the Special Trustee Agreement to be invalid;

10. On the Tenth Cause of Action, for declaratory relief finding Bearbiz to be an invalid trust;

11. On the Eleventh Cause of Action, for (a) an order requiring Defendants, and each of them, to divest themselves of any interest, direct or indirect, in the foregoing enterprises; (b) an order imposing reasonable restrictions on the future activities or investments of Defendants, and each of them, including without limitation prohibiting them from engaging in the same type of endeavor as the enterprises engaged in; (c) an order dissolving or reorganizing said enterprises; (d) threefold (treble) the damages that she has sustained; (e) costs of suit; and (f) reasonable attorneys' fees.

12. On the Twelfth Cause of Action, an accounting of all monies that Theodore took from Gertrude.

13. On the Thirteenth Cause of Action, an accounting of all monies received by or paid by Bearbiz, Ultimate Action, Supreme Studios, TF Properties 2 and TF Properties 3, including without limitation an accounting showing the origin and disposition of the funds used by Defendants to buy creditor judgments, charging liens and other liens recorded and/or claimed against Gerson and/or Gertrude.

14. On the Fourteenth Cause of Action, for damages in an amount to be determined at trial for Defendant Theodore Fox's intentional infliction of emotional distress, and for punitive or exemplary damages to punish and set an example of Theodore

On all Causes of Action, for such other and further relief as the Court may deem just and proper under the circumstances of this case.

Dated: May 14, 2021            LAW OFFICES OF PHILIP KAUFLER

By: _____
      Philip Kaufler, Esq.
      Attorneys for Plaintiff JANICE FOX

Dated: May 14, 2021            STRECKER LAW OFFICES

By: _____
      Marc S. Strecker, Esq.
      Attorneys for Plaintiff JANICE FOX

EXHIBIT A

LAW OFFICES OF

# GARY M. GITLIN

GARY M. GITLIN, ESQ.

A PROFESSIONAL LAW CORPORATION
15760 VENTURA BOULEVARD, SUITE 1200
ENCINO, CALIFORNIA 91436

TELEPHONE (818) 516-1725
FACSIMILE (602) 256-6524

October 23, 2012

*Via Email*

Mrs. Janice Kaufler

> Re:   *Kamen Litigation and Related Matters*
> *[Communicated Under the Litigation Privileges]*

Dear Janice:

By way of reintroduction, you and I met on September 18, 2012 at the post Rosh Hashanah evening meeting at your parents' residence in Beverly Hills. You may recall in attendance was of course you and your lawyer husband Philip, your mother Gertrude, your brothers Ted and Barry, David Frank (who handles the property management duties), and their your parents' legal team comprised of Aram Ordubegian, Chris Scali, Tim McGonigle, and me. We had orchestrated the evening gathering (which lasted approximately three hours) for purposes of discussing the status of the various Kamen fiascos and corresponding litigation and as it particularly related to your parents, specifically Gerson's real estate holdings and pending lawsuits and the like.

As noted in my introduction, I am Special Counsel for Gerson and Gertrude in connection with the Kamen litigation and related cases. I initially was brought into the equation through Ted as a means by which to assist in coordinating a transition from the Buchalter Nemer law firm ("BN") to replacement counsel due to the less than stellar BN representation and the difficulties facing your parents, in particular Gerson, in light of BN's ineffective services.

As part of my assisting in the transition, it became clear that your parents, and again Gerson in particular, required someone to oversee and in effect *quarterback* the enormity and volume of litigation as most clearly attorney Richard Ormand at the BN firm failed miserably in such task. As time proceeded, I became a bit more involved than anticipated and continue to assist Gerson and Gertrude through and in particular Ted, on the various pieces of litigation both in the bankruptcy arena as well as the civil litigation forum.

With the representation baton handed off to the Arent Fox law firm ("AF") from BN, AF was retained because of the required bankruptcy and civil litigation expertise and the corresponding complexity of the litigation at both civil litigation and bankruptcy forum. After, however, five to six months of representation, there was mutual understanding that a further transition would be necessary-this was principally motivated by the below referenced misunderstanding on fee arrangement-thus, your parents engaged further replacement legal counsel – the Pachulski Stang Law Firm ("PS") – as well as other attorneys for State Court matters in California and other states. With the significantly increasing attorneys' fees, a revisit

Mrs. Janice Kaufler
October 23, 2012
Page 2 of 7

of how we move forward was necessary in order to support the comprehensive defensive posture on behalf of Gerson (and Gertrude and their respective Trusts) as well as resuming prosecution on the various claims and the like.

In the course of presenting the update and status to you (and in effect Philip even though the meeting was clearly identified and intended to be a "family" communication) and Barry, and listening to all of the questions that you provided (actually your husband Phillip) it began to crystallize rather quickly for me the realization that there is seemingly a significant disconnect as to your (and Philip's) understanding of the gravity and extent of the fraud and deceit that has been perpetrated upon your parents, Gerson in particular, coupled with the rather interesting statements of lack of awareness of the substantive aspects of the travesty inflicted upon your parents by Michael Kamen.

I listened with care as to the ongoing repeated statements by Philip (on your behalf I presume) as to his lack of understanding and puzzlement of "How could Gerson be taken advantage of in this way?" and related aspects of suspicion as to what actually occurred and how the Fox Estate has been so fundamentally eroded, derailed and diluted by reason of the Kamen acts of misconduct?

To better assess a sense of direction on how to effectively follow through with our evening discussion as well as get beyond the Jewish Holidays, I was intending to provide some additional texture to the meeting however, in the meantime, you forwarded an email to Ted of September 30, 2012, to which I focus this response.

Clearly, the above referenced email (September 30th) was prepared by Phillip. In reviewing the eight enumerated questions, integrating those questions with the responses from you (actually again Philip as he was the principal communicator ostensibly on your behalf), the interaction from that Tuesday night provides an unencumbered path of an obviously adopted disingenuous position. The pretense and facially transparent perspective of astonishment and lack of belief runs fundamentally afoul with the inescapable fact that both you and Philip had prior actual knowledge that the BN firm had been engaged in 2011 to represent your parents, had in fact drafted a comprehensive Complaint filed against Kamen (I believe you actually have a copy of that initial Complaint against Kamen from October 28, 2011 along with the three other related Complaints) and were fully apprised of the various substantive aspects during the BN era of representation of Gerson and Gertrude. In fact, Michael Kamen, _who was convicted of no less than 111 Contempt Charges by a Los Angeles Superior Court Judge_ in 2011 relative to his management (more appropriately mismanagement) of the real properties which are referenced in the Complaint and to which your father shared a common ownership interest, is a well acknowledged "quantity" to you (and Philip) and thus the acts of misconduct effected by Kamen should come as neither a surprise nor mystery to you (and Philip).

Mrs. Janice Kaufler
October 23, 2012
Page 3 of 7

Thus, rhetorically, one would ask why, armed with actual knowledge of allegations of misconduct and misdeeds perpetrated by Kamen, would Janice (and Philip) don a pretext of lack of understanding or disbelief as to what had transpired for the past several years? The answer for me, on behalf of Gerson and Gertrude, is not a positive conclusion, but in fact incorporates a healthy dose of your apparent posturing, gamesmanship, and conduct of a child (notwithstanding adulthood) to her parents that is less than forthright and righteous.

Instead of embracing an understanding as to the enormity of all that has occurred, and still is processing, through the alleged Kamen fraud in which he basically raided the Fox treasury of assets and value, you and Philip adopted a belief that Kamen could not have taken such significant advantage over Gerson, and thus in effect expressed resistance and inferred perspectives that all of the pending litigation somehow was orchestrated for purposes of some other agenda (unknown to any of us) or the dilution of the Fox Estate attributed by acts other than Kamen and his band of culprits (Barreca, et al). As I further distill on the analysis, I found particularly of interest your September 30th request for you to be provided a copy of the current Estate Plan (to be blunt, Gerson has stated clearly that he would not agree to the disclosure of this subject matter and documentation)...I cannot imagine how or in what manner, fashion or role that piece of information would play relative to your being a loving and supportive daughter to the events that are nothing short of horrific and catastrophic to your parents.

As such, and recognizing the proverbial metaphor (Philip will get this one easily) *if it walks like a duck, looks like a duck, and quacks like a duck, it is a duck!*...all of which translates to a level of distrust relative to your and Philip's motives and intentions. Accordingly, I will get directly to the point so that no one has any confusion or misunderstandings and that the prospect of ambiguity is all but eliminated from the communications. I provide you with the following:

1. Gerson and Gertrude have been the victims of an incredible and comprehensive scheme of fraud and deceit perpetrated by Kamen and his associates, as well as his 111 Contempt Charges by the Los Angeles Superior Court Judge in 2011 brought about by a second member of the referenced real property ownership entities. Further, and most recently, Kamen's recent Bankruptcy now has a court appointed Trustee handling the affairs of the Estate as a result of his past and present conduct relative to the management and oversight of such real properties...are you still embracing a perspective of "shock and disbelief?"

2. The effects of the alleged Kamen fraud resulted in properties to which Gerson and Gertrude had ownership interests being refinanced without authority, knowledge, consent or ratification, net loan proceeds being diverted away from the ownership entity and retained by Kamen and his culprits, coupled with executed loan documents many of which are clear forgeries all the while Kamen and his property management groups (and various Mika entities) misappropriated

Mrs. Janice Kaufler
October 23, 2012
Page 4 of 7

rental income and net loan funds for purposes not directly beneficial to the various properties to which they applied; and then orchestrated into a fashion of foreclosure to which Kamen and his associates would acquire either the property or the underlying secured loans at discounts thus facilitating a *double dip* beneficial only to the Kamen group (and thus steal the properties at a discount and then cause Gerson to be sued by such secured lenders for claimed deficiencies with forecasted judgments being entered on such loan transactions). There obviously are a host of other nuances and permutations of the acts of misconduct, the sum and substance to which you are already privy and, per as alleged, the initial BN Complaint filed against Barreca, Kamen, et al, and as further re-alleged in the filed Complaint for Non-Dischargeability in the Kamen Chapter 11 Bankruptcy Case.

3. Of Gerson and Gertrude's three children, only Ted has come forward to assist, create guidance, support, and in fact subsidize the litigation fees that have been incurred in sizable dollars. Clearly, Barry from logistics and the like, can only provide minimal support to his parents for all of the obvious reasons. You, however, Janice, with your lawyer husband Philip at your side have had full knowledge of all that has transpired and yet there has been not one ounce of assistance, contribution, or most importantly the bringing out of a checkbook to help pay for the lawyer fees currently incurred and to be incurred.

4. Gerson and Gertrude fully support Ted in his efforts and in his assistance on their behalf.

5. Gerson and Gertrude have made known their position pursuant to a written agreement as well as video vocalizing with clarity and direction the support and appreciation of Ted's efforts.

6. To date, either through advances, agreed loans, and other arrangements between Ted and your parents, Ted has paid from his own financial resources significant dollars over the past years, and most recently since 2009, in excess of US $1M (one million) dollars in attorneys' fees to BN, attorneys' fees to AF, investigators, other professionals, and towards property maintenance, taxes, and expenses. Additionally, Ted has made direct loans to Gerson evidenced by accounting, Promissory Notes and the like, all of which was effected prior to the start of the Kamen fiasco. The loans were at Gerson's request to satisfy urgently needed expenses. **No one** has stepped forward on behalf of the Fox Family to either reimburse Ted or to assist in the further expenses to be incurred in the Fox representation on the Kamen litigation.

Mrs. Janice Kaufler
October 23, 2012
Page 5 of 7

7.  As noted above, we are currently transitioning away from AF principally because of a misunderstanding on ongoing timing on the payment of fees as noted above. We have other attorneys that are coming onboard to continue in the representation and protecting as optimally as possible Gerson and Gertrude's estate while fending off the various breach of guaranty lawsuits that have been filed against them along with a host of other collateral litigation and bankruptcy proceedings. Along these lines, Ted has now also been sued for being Gerson/Gertrude's representative asserting various unmeritorious claims of misconduct.

I take the moment to digress as it is opportune to do so...nowhere do you indicate, or even provide an indicia, to your willingness to support the litigation and the writing of a check. While facially it may appear that the questions you (Philip) have asked per the September 30th email would lead down the path to the prospect of you financially assisting on the pending litigation, the inescapable disingenuous position expressed at our September 18th meeting coupled with your item # 8 (requesting a copy of the Gerson and Gertrude Estate Plan) reveals the more transparent underlying (and unacceptable) agenda at hand.

8.  With Ted having expended significant hard dollars (see Paragraph 6 above), Gerson and Gertrude certainly not only look to reimburse Ted his out-of-pocket loans, but also to assist him in the enormity of his time which the Kamen and other Gerson Fox litigation has required in order to effectively compensate him for lost opportunity costs and time, time invested, as well as some type of component of value to the out-of-pocket expenses he has incurred. Ted has been required to finance properties, take dollars out of current investments, as well as defend himself against litigation and liens attaching real property that is owned or to which otherwise belongs to Ted.

9.  Since our September 18, 2012 evening meeting, both Gerson and Gertrude have been cautious of your communications with them, while noting with interest the heightened level of your contact and communications with them, such interaction of which has been significantly missing in prior times...the increase in contact certainly is of coincidence, if not in fact for other hidden reasons.

10. Without any waiver of attorney-client privileges, my direction from Gerson and Gertrude is clear and unambiguous relative to the support and endorsement of Ted's assistance, reimbursements, and compensation. Such clarity is expressed by Gerson and Gertrude affirming all of the statements that have been made in this communication as indicated by their signature reflected at the end of this letter.

11. With all the above noted, hopefully you can resume being a supportive and
loving daughter to your parents, trying to be supportive of all of the hardships,
travails and challenges that they are both experiencing...financially, emotionally,
and medically. I urge you to do your best to squelch your appetite on embracing
the vision of what may be available to you personally from the Fox Estate at the
end of the day. Your parents have made it abundantly clear on how they want
their assets to be disposed of and I have neither liberty nor authorization to
disclose to you any of those specifics as candidly it is "none of your business." If
you truly care for the welfare and wellbeing of your parents, please eliminate
your thirst on the financials and focus on the present and helping your parents as
best you can without feeding them distraction, gossip, or other polluted
perspectives. Equally, try to be supportive of your brother Ted...he has been and
continues to shoulder an enormous responsibility in caring for your parents,
keeping the litigation afloat, and coming out-of-pocket from his own financial
resources such that there is the opportunity to salvage some portion of the Fox
Estate.

As far as your document request of September 30th followed up by Philip's related emails
and your most current emails, we will categorically defer in responding or providing the
requested information per the instruction of Gerson and Gertrude.

In closing, Gerson and Gertrude recognize they owe a huge debt of gratitude to and from
Ted's personal investment of time and money to unravel this massive scheme and to effectively
address Gerson's missteps...and to the September 18th inquiries by you and Philip, yes; Gerson
was enormously taken advantage of. Gerson quietly and modestly accepts his responsibility in not
being more proactive and attentive to his business needs, relying instead on the friendship and
relationship he had for decades with Michael Kamen, it never crossing his mind that Kamen
would commit such a comprehensive level of fraud and deceit upon his dear friend Gerson.

Please bear in mind that without Ted's participation and involvement, the Fox Estate
would have been thoroughly raided and without any economic value with large Judgments
entered against Gerson necessitating his filing a Chapter 7 Bankruptcy and leaving him with not
much to speak of after a lifetime of endeavor and perseverance in the business world.

I have been instructed specifically to notify you that you (and Philip) as well as Barry are
not to be involved in the Kamen, Blum and related legal and litigation matters and that Ted will
continue to assist in his representative capacity on your parents' behalf. Ted has placed his own
financial wherewithal along with his business enterprise in jeopardy and at risk because of the
volume and the amount of time that the Kamen litigation requires. To this, Gerson and Gertrude
very much intend to reward Ted with the appropriate reimbursements, compensation, and other
benefits. To this end neither you nor Philip should have any concern as your parents have with

Mrs. Janice Kaufler
October 23, 2012
Page 7 of 7

clear thought a complete understanding of how they wish to proceed and how they would ultimately want their estate to be handled.

This should bring closure on the subject matter at hand. As noted above, be a loving daughter, be understanding and supportive, however try to resist as best you can placing your fingers in a quickly eroding cookie jar curious as to what remnants may be coming your way. As far as Ted's perseverance and endeavors, I will simply put it on the table very bluntly: do not even think about questioning the propriety, valor, or merits to which Ted has conducted himself relative to the Kamen and other litigation matters and in his assisting Gerson and Gertrude. Any indication of your signaling into that direction will result in some very immediate and potentially harsh response from your parents as well as, I am sure, Ted.

Govern yourself accordingly.

Very truly yours,

GARY M. GITLIN
A PROFESSIONAL LAW CORPORATION

By: /s/ Submitted Electronically
    Gary M. Gitlin

READ, UNDERSTOOD, AND REAFFIRMED ON THIS 25th DAY OF OCTOBER, 2012 AT BEVERLY HILLS, CALIFORNIA.

_____          _____
Gerson Fox, Individually and as Trustee of          Gertrude Fox, Individually and as Trustee of
the Gerson and Gertrude Fox Family Trust          the Gerson and Gertrude Fox Family Trust

GMG: jb

# EXHIBIT B

LAW OFFICES OF

# GARY M. GITLIN

GARY M. GITLIN, ESQ.

A PROFESSIONAL LAW CORPORATION

15760 VENTURA BOULEVARD, SUITE 1200

ENCINO, CALIFORNIA 91436

TELEPHONE (818) 516-1725

FACSIMILE (602) 256-6824

November 9, 2012

*Via Email and Regular Mail*

Mrs. Janice Kaufler

Re:   *Gerson and Gertrude Fox*

Dear Janice[1]:

Your parents have shared with me your breakfast meeting of Thursday, November 8, 2012. It is nothing short of: (i) outrageous that you would speak to your parents in such an aggressive, harassing, and threatening manner; and (ii) mystifying as to how you (and Philip) believe that you can conduct yourselves in such a distasteful, disloyal, and unloving way with your parents and think that no one, including Gerson and Gertrude's lawyers, is not going to learn about such acts of misconduct. Certainly you are aware that your underlying agenda is overwhelmingly transparent.

Specifically, I have learned that you made demand on Gerson and Gertrude that they retract the countersigned letter authored by me of October 23, 2012 and that if they (your parents) refused to do so (you had a legal letter prepared by Philip and presented to your parents for their signature, which you would not let them keep after it was read – clearly a planned ambush at a casual breakfast) you exclaimed that you were going to be forced to respond and sue them[2]. Putting aside for the moment on what grounds you would bring legal action (such threats appear to be baseless, stated for purposes of intimidation and harassment); the mere threat crosses the threshold of improper undue influence, and potential extortion. It is abundantly obvious that you embrace the concept that simply because you are a child of Gerson and Gertrude that your parents are obligated in some contractual or legal fashion to provide estate assets for you. Any parent has an absolute retained right to disavow inheritance or other privileges to an adult child. The Gerson and Gertrude estate is soundly

---

[1] *Although this letter is addressed to you specifically, we all understand that you share everything with Philip and clearly Philip is at the forefront in directing and orchestrating your ill-advised and unacceptable behavior. Thus this letter is as much as address to Philip as you directly.*

[2] *The mere fact that you would actually threaten your parents in and of itself is abusive and outrageous, however equally of concern is of what basis a lawsuit would be founded. It appears that you have claims against your parents, the substance of which remains unknown, let alone demonstrates that at this point moving forward your parents and their lawyers perceive you as an adversary and enemy. Your words and conduct speak volumes and reinforces the depth of your animosity towards your parents, as well as your brother Ted. Simply to reiterate the October 23, 2012 letter neither necessitated nor invited a response.*

Mrs. Janice Kaufler
November 9, 2012
Page 2 of 3

within their control, direction, and ultimate disposition.   Threatening your parents is illustrative of an insatiable appetite for the estate assets and you are prepared to pursue such endeavors irrespective of Gerson and Gertrude's interest and rights.

I will defer extrapolating on all of the further nuances of the breakfast morning communication and simply reiterate and reaffirm your parents' position as follows:

1.   Gerson and Gertrude have reaffirmed the integrity, sanctity, and correctness of the October 23, 2012 letter which I authored (countersigned by your parents and forwarded to you by email and US mail).

2.   You (and this includes Philip) are hereby placed on notice that you are to have no further communications or contact, directly or indirectly, with Gerson or Gertrude. That means that you are not to contact your parents by telephone, cell phone, email, letter, nor are you invited to visit their home until you receive further instruction from me or one of their other authorized legal representatives.   Yes, Janice, your threats have now necessitated your parents having to take a protective measure against your volatile, unkind, and intimidating actions.   To Gerson and Gertrude, you are still their child whom they love very much, however that love does not translate into them allowing you any further opportunity to cause hurt, disharmony, and upset to them.

3.   We are interpreting the threats that you have made on the morning of November 8, 2012 (keeping in mind that historically you seem to have a penchant and *M.O.* to threaten your parents) as tortious, perpetrated intentionally to cause emotional distress to both of your parents, and crossing the threshold into elder abuse.   If need be, your parents are prepared to seek a restraining order against you (and Philip).

The efforts on your side to intimidate and harass your parents have come to an end as there is no further tolerance or willingness for your parents to embrace latitude or accommodation to such inappropriate behavior and unacceptable communications.

4.   To provide you an abundantly clear understanding of the current status, your parents and their lawyers are all aptly aware that your efforts are simply to seek money from the estate assets. Your parents are very clear in their perspectives and have so reflected the same, most recently per the letter of October 23, 2012.

5.   If you are truly a loving child, truly interested in what is in the best interest of Gerson and Gertrude, and are sensitive to all that has occurred in the Kamen and Non-Kamen items of litigation, then you will be respectful of this demand and effectively "stay away" from your parents and await further instructions from them (countersigned by one of their lawyers) as to when they are prepared and willing to visit or otherwise visit with you.

Mrs. Janice Kaufler
November 9, 2012
Page 3 of 3

      6.   Gerson and Gertrude and those supportive of them have all been made aware that in addition to above demands, should you disavow the demands to stay away and accordingly contact Gerson or Gertrude, we will proceed and take all appropriate action for implementing restraining orders and institute such litigation for elder abuse and other related tort causes of action against you and all other appropriate individuals.  Should some time in the future arrive when Gerson and Gertrude are willing to entertain the prospect of visiting or talking with you, be assured that at all times such communication will be supervised by others as you will not be permitted to have any unauthorized or one-on-one communications with either of your parents.

      7.   Gerson and Gertrude each reaffirm the statements set forth in my letter to you of October 23, 2012. You are hereby properly and fully advised not to contact or communicate with your parents as stated in the contents of this letter as well as the October 23, 2012 letter.  Gerson and Gertrude are each extremely capable of independent thought and rational thinking and have been and continue to exercise such capacity and rational thought; and are very much aware of all that is transpiring, however I am advised that you are incredibly manipulative and, as historically demonstrated, have the ability to unduly influence and impose duress and threats upon Gerson and Gertrude.

      Gerson and Gertrude's positions and reflections are clear and unambiguous.  You are hereby placed on notice.

      Govern yourself accordingly.

                Very truly yours,

                GARY M. GITLIN
                A PROFESSIONAL LAW CORPORATION

                By: */s/ Submitted Electronically*
                  Gary M. Gitlin

**READ, UNDERSTOOD, AND REAFFIRMED ON THIS** _9th_ **DAY OF NOVEMBER, 2012 AT BEVERLY HILLS, CALIFORNIA.**

_____
Gerson Fox, Individually and as Trustee of the
Gerson and Gertrude Fox Family Trust

_____
Gertrude Fox, Individually and as Trustee of the
Gerson and Gertrude Fox Family Trust

GMG: jb

EXHIBIT C

LAW OFFICES OF

# GARY M. GITLIN

GARY M. GITLIN, ESQ.

A PROFESSIONAL LAW CORPORATION

15760 VENTURA BOULEVARD, SUITE 1200

ENCINO, CALIFORNIA 91436

TELEPHONE (818) 516-1725

FACSIMILE (602) 256-6524

November 21, 2012

*Via Email and Regular Mail*

Mrs. Janice Kaufler

*Re:   Gerson and Gertrude Fox*

Dear Janice:

I have been provided a copy of your two-page November 15, 2012 letter delivered to Gerson on Friday, November 16, 2012 (delivered by your son Alex). I have also been made aware that you have approached and spoken with Gerson on Monday, November 19, 2012. You have perpetrated both communications with acknowledgment of my October 23, 2012 and November 9, 2012 letters countersigned by Gerson and Gertrude.

Notwithstanding the clarity, instruction, and specifics of both of my letters to you, you have sought to disregard the content and import of the letters and have instead deliberately communicated with Gerson (interestingly you have effected both avenues when your mother was not present) and as part of your November 15, 2012 communication permeate misrepresentations, further acts of disloyalty, and otherwise questioning the veracity and authority of my communication and representation.

As apparently you require something a bit more assertive and poignant in the form of a Court Order, be advised that I have been instructed to proceed in the obtaining of a restraining order against you and Philip (and if need be your children if they intend to continue to serve as messengers and agents for your communications) and will take such actions as necessary to reaffirm, maintain the integrity, and enforce the sanctity of my Clients' demand that they be left alone and not contacted by you.

As everyone has acknowledged, *the jig is up* relative to your true ambitions and intentions. Your parents want nothing to do with it and would much prefer for you to simply honor their wishes and at this juncture demands, without incident, complication, or interference.

Your parents have asked that I provide one last opportunity for you *to listen, understand, and comply* with their instructions and not to contact them…they cannot be any clearer. At this point in time you need only to forward to me your communication via email (that would be fine) confirming the acknowledgement of Gerson and Gertrude's instructions and that you agree that you will not contact them until you have been advised further-in writing and countersigned by their legal counsel-that some form of communication and relationship may be permitted to resume.

You are provided until the end of Monday, November 26, 2012 to advise me in writing of your acknowledgement, understanding and compliance. Failure to do so will result in our proceeding with obtaining the requisite restraining order and taking such other further legal action as may be necessary.

Mrs. Janice Kaufler
November 21, 2012
Page 2 of 2

As to your November 15, 2012 letter, be advised that we understand it to be substantively, materially, and fundamentally untrue, inaccurate and packed with statements that you (or Philip) could only have conjured from viewing numerous episodes of the Twilight Zone as your perspectives and statements are literally pure fantasy.  Thus suffice to state that your parents substantively and materially disagree, do not accept, and reject your statements in their entirety, without addressing any specifics or particulars that may have some indicia of accuracy.

Instead of being a loving, supportive, and loyal child of Gerson and Gertrude, you have once again displayed unequivocal and inescapable evidence that you intend to do whatever it is you wish to do regardless of its impact upon your parents, or others.

However you wish and intend to respond (acknowledgement or silence) this will probably be our last communication on this subject matter.  Either you will accede and support your parents' directives as indicated in my two prior letters or the next level of communication will be the formality of your having to respond to the petition for issuance of a restraining order and potentially such other civil relief.

Be advised that all rights and remedies are expressly retained and reserved.  Your parents certainly are enormously disappointed by your refusal to honor their wishes and that which is in their best interest.  And to be clear, I am engaged and retained by Gerson and Gertrude.  They are my Clients and they have affirmed and countersigned the contents of both letters that I have dispatched to you having reviewed those contents with particularity and approved the same as evidenced per their signature at the end of each letter…the same as they are doing once again per this correspondence.

Very truly yours,

GARY M. GITLIN
A PROFESSIONAL LAW CORPORATION

By: /s/ Submitted Electronically
      Gary M. Gitlin

Janice:  As your parents we are asking you for the last time not to contact us or communicate with us.  The letters from Gary Gitlin reflect our directives.  While we love you as our daughter, we find your intentions untrustworthy and your threats to us unacceptable.  Please honor our wishes and maybe for the very first time put the interest of others ahead of yours.

**READ, UNDERSTOOD, AND REAFFIRMED ON THIS** 21st **DAY OF NOVEMBER, 2012 AT BEVERLY HILLS, CALIFORNIA.**

_____
Gerson Fox, Individually and as Trustee of the
Gerson and Gertrude Fox Family Trust

_____
Gertrude Fox, Individually and as Trustee of the
Gerson and Gertrude Fox Family Trust

GMG: jb

cc: Clients

C:\Users\Maximus\Documents\2012\112012-11-21\Kaufler 2012-11-21 v3.doc